### THE STATE OF TEXAS v. THE AUSTIN CLUB.

#### No. 342.—Decided December 9, 1895.

**Social Club—Retailing Spirituous Liquors.**

The license tax imposed upon persons "engaged or engaging in the business of selling spirituous * * * liquors" does not apply to a club organized under the general incorporation laws for the "encouragement of social intercourse among its members" * * * although spirituous liquors were bought and dispensed without profit to its members. The state cannot recover license against such club under art. 3380, Rev. Stats. (3226a, Sayles' Ed.).

QUESTIONS CERTIFIED from Court of Civil Appeals for Third District, in an appeal from Travis County.

The questions certified appear in the opinion.

*M. M. Crane,* Attorney General; *H. P. Brown,* assistant, for appellant.—An incorporated club, organized for social and other purposes, that continuously, from time to time, purchases in bulk spirituous, vinous and malt liquors and medicated bitters, and through its authorized

agent and employe retails same to its members only, without regard to profit, in quantities less than one quart, at an agreed price per drink, which each member pays according to the quantity he calls for and consumes, is liable to the payment of the annual tax imposed and levied by virtue of the Act of the Legislature of this State, passed on the 4th day of April, 1881, on every person, firm, or association of persons engaged or engaging in the business of selling spirituous, vinous and malt liquors and medicated bitters in quantities less than one quart. Sayles' Texas Civ. Stats., art. 3236a, secs. 1 to 3; U. S. v. Wittig, 2 Low., 466; People v. Soule, 74 Mich., 250; State v. Neis, 108 N. C., 787; State v. Lockyear, 95 N. C., 633 (59 Amer. Rep., 287); State v. Horacek, 41 Kans., 87; State v. Tindall, 40 Mo. App., 271; State v. Essex Club, 53 N. J. L., 99; People v. Andrews, 115 N. Y., 427; Martin v. State, 59 Ala., 34; Marmont v. State, 48 Ind., 21; Chesapeake Club v. State, 63 Md., 446; State v. Easton Social, etc., Club, 73 Md., 97; State v. Mercer, 32 Iowa, 405; Reckard v. People, 79 Ill., 85; State v. Tindall, 40 Mo. App., 271; People v. Luhrs, 28 N. Y. Sup., 498; 7 Misc. Reports (N. Y.) 503; Commonwealth v. Tierney, Pa. Quart. Sess., 29 W. N. C., 194; 148 Pa St., 552; (24 At., 64); Nogales Club v. State (Miss.), 69 Miss., 218; Commonwealth v. Stiffries, 2 Pa. Dist. Rep., 152; People v. Sinell, 12 N. Y. Sup., 40; State v. Farmer's Social, etc., Club, 73 Mo., 97; People v. Bradley, 11 N. Y., 594; Com. v. Jacobs, 25 N. E. Rep., 463.

*J. L. Peeler* and *Fisher & Townes,* for appellee.—A club, such as the Austin Club, organized and maintained for social purposes only, and not with the view of conducting the business of a vendor of liquors for profit, is not subject to a state license tax, and such a club is not within the law requiring a license to be paid before liquors, dispensed for a price paid by members, can be distributed to and among them. The purpose of the Legislature was to regulate the dealing in liquors as an occupation or business, and to require a license to vendors of liquors only where the selling is engaged in as an occupation or business followed as a means of or with a view to profit. Sayles' Statutes, art. 3226a; Criminal Code, art. 110; Koenig v. State, 26 S. W. Rep., 835; State, ex rel., Bell v. St. Louis Club, 28 S. W. Rep., 604; Tennessee Club v. Dwyer, 11 Lea, 452; Seim v. State, 55 Md., 566; Graff v. Evans, L. R., 8 Q. B. D., 373; Comm. v. Pomphret, 137 Mass., 564; Piedmont Club v. Comm., 12 S. E. Rep., 963; Barden v. Montana Club, 25 Pac. Rep., 1042; State, ex rel., Columbia Club v. McMaster, 14 S. E. Rep., 290; Standford v. State, 16 Texas Ct. App., 331; Williams v. State, 23 Texas Ct. App., 499.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals of the Third Supreme Judicial District certified to this court the following statement and question:

"On September 21, 1893, the State of Texas brought this suit to recover $1200 alleged to be due from the Austin Club, a corporation, as occupation taxes for continuously engaging in the business of selling

spirituous, vinous and malt liquors and medicated bitters, in quantities less than one quart, from December 27, 1889, up to the date the petition was filed.

The pleadings, evidence and assignments of error raise the question herein certified.

The trial court's findings of facts consist of an agreed statement of the facts upon which the case was there and is here submitted. Said statement is as follows:

"It is agreed by and between the parties hereto, the State of Texas, acting by and through her district attorney, A. S. Burleson, and the Austin Club, acting by and through its attorneys of record, Jno. L. Peeler, Esq., and Messrs. Fisher & Townes, that this cause shall be submitted to the court for its determination upon the following agreed statement of facts."

The Austin Club is a corporation created under the laws of the State of Texas, the charter of which is, in substance, as stated below, except where it is copied.

Article one provides that James R. Johnson, Lewis Hancock, A. P. Woolridge, W. H. Tobin, E. Saunders, John Orr and M. D. Mather, and their associates, are to constitute the body politic, known as the Austin Club, with the usual powers of contracting and being contracted with, suing and being sued, and the right to purchase and hold real, personal and mixed property, to have a seal, and exist for a term of fifty years.

Section 2 of the charter is as follows:

"Section 2. The purpose and objects of this corporation are the encouragement of social intercourse among its members, the support of literary undertakings and cultivation of literature, the maintenance of a library and reading room, and the promotion of fine arts."

Section 3 provides that the business shall be transacted at the city of Austin, and that it shall be under the control of a board of eleven directors, to be elected at the annual meetings of the members, to be held on the first Tuesday in January of each year. It provides for the filling of vacancies in the board, and names the directors for the first year.

Section 4 provides that there shall be no capital stock, the funds of the club to be made up of initiation fees and monthly dues.

The charter was duly executed and filed in accordance with law and the corporation organized thereunder.

"Second: That since the date of the incorporation of said club it has from time to time purchased in bulk spirituous liquors and medicated bitters, and, through its authorized agent and employe, retailed same to its members in quantities less than one quart and at an agreed price per drink, and has continuously so done to this day.

"Third: That each member of said club pays for the quantity of spirituous liquors, etc., he calls for and consumes.

"Fourth: That only members of said club are permitted to purchase in any quantity from said club spirituous, vinous and malt liquors, etc

"Fifth: That said club is carrying on its business and is domiciled in the second story of a building situated on lot No. 1, in block No. 84, in Austin, Travis County, Texas, and is using in connection therewith the following stock, fixtures and personal property: Two billiard tables and one pool table, and billiard racks, cues and balls therefor; one oak sideboard, 7 oak tables, 2 oak desks, 10 upholstered chairs and 2 upholstered sofas, 36 chairs in billiard room and reading room, 3 carpets, and bar, glasses, fixtures, etc.

"Sixth: That said club has not paid to the collector of taxes of Travis County, for the State of Texas, the annual tax levied on every person engaged in selling spirituous liquors, etc., in quantities less than a quart, $300 for the year ending December 27, 1890; nor $300 for the year ending December 27, 1891; nor $300 for the year ending December 27, 1892; nor $300 for the year ending December 27, 1893, nor any part thereof.

"Seventh: That said club has continuously since its incorporation paid internal revenue license to the United States as liquor dealers.

"Eighth: That said club does not sell spirituous liquors, etc., for profit, and that the money arising from sales of spirituous liquors, etc., to members is placed in the treasury of the club and is only used for the expenses of the club and replenishing the stock of liquors, etc.

"Ninth: That said club is now in debt about $1000, which is the excess of expense over the revenues derived from the sales of liquors, etc., dues and initiation fees, received since its organization.

"Tenth: That said club numbers 100 members.

"Eleventh: That said club sells only the finest imported whiskies, and the price charged therefor is 25 cents for two drinks; and beer it sells in bottles, for 15 cents per pint and 25 cents per quart.

"Twelfth: That said club keeps on hand for the use of its members the latest and most advanced literary periodicals and magazines.

"Thirteenth: That its by-laws and rules for its regulation are as follows:"

The association adopted by-laws of which we will make extracts substantially, and by quotation, where necessary, of so much as are material to the question certified for our decision.

The first article of the by-laws states the purpose of the corporation to be the same as that stated in the charter.

Article three of the by-laws provides for the membership of the club, in substance; that such membership is not to be limited; each member is to be elected by the board of directors by ballot; then proceeds to prescribe the qualifications of the members and the method of proposing candidates and acting upon such application.

Article four of the by-laws fixes the entrance and initiation fee at $25, and the annual subscription for all members at $30, payable monthly in advance on the first of each month.

Article seven makes it the duty of the president of the club on the first day of each quarter to appoint three members of the board of direc-

tors, called the house committee, whose duty it is to exercise control and supervision, "in the broadest sense of these terms," over the management and conduct of the club house.

Article eight is in these words: "Non-residents of Travis County may be admitted as contributing members upon the payment in advance of the initiation fee provided for members; provided, that they shall be proposed and elected in accordance with article three. Such contributing members shall be entitled to all the privileges accorded to regular members, except that of voting and holding office."

Article nine permits any member to introduce, on his own responsibility, a stranger who does not live in the limits of Travis County and is not engaged in business therein, for a period of one week, under certain regulations, and contains this provision: "In event of strangers so invited failing to settle their accounts, the member introducing them shall become liable for the amount of their indebtedness."

Under authority conferred by the by-laws rules were adopted for the government of the club,

Rule 2 authorizes and directs the house committee to make all purchases or direct the same; to regulate the prices to be charged for all articles served by the club; report to the secretary the names of members who may be in arrears, etc.

Rule 4 permits strangers not residing or engaged in business in Travis County to be introduced as visitors, and makes the members introducing any members responsible for their deportment and for any debts contracted by them. No person residing or engaged in business in Travis County, not a member of the club, should be permitted to visit the club.

Rule 6 of the club is as follows: "The club shall be open at 8 o'clock a. m., and shall be closed against the admission of members at 2 o'clock a. m. The lights shall be turned off and the club house closed at 2 o'clock a. m. every night."

Rule 16 is as follows: "No supplies furnished by the club shall be sold on credit. Supplies shall be paid for at the time of receipt, in such manner as the house committee shall from time to time direct."

The statute under which the State claims that the Austin Club is subject to an occupation tax reads as follows:

"Hereafter there shall be levied upon and collected from any person, firm or association of persons engaged in the business of selling spirituous, vinous or malt liquors, or medicated bitters, an annual tax upon every such occupation or separate establishment, as follows: For selling spirituous, vinous or malt liquors or medicated bitters, in quantities of less than one quart, three hundred dollars." (Sayles' Statutes, art. 3226.)

"The material and controlling question in the case is this: Under the agreed facts as above set out, was the Austin Club engaged in the business of selling spirituous, vinous and malt liquors and medicated bitters within the meaning of the statute? That question the Court of Civil Appeals for the Third District has decided to certify, and it is hereby certified, to the Supreme Court for decision."

In addition to the article of the Revised Statutes quoted by the court in its submission of the question certified, we call attention to section four of that article, which requires all persons desiring to engage in the sale of spirituous, vinous or malt liquors to give bond, among the conditions of which are the following: that "he shall keep an open, quiet and orderly house or place for the sale of spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication." In the same section "open house" is defined as follows: "An open house within the meaning of this act is one in which no screen or other device is used or placed, either inside or outside of such house or place of business, for the purpose of or that will obstruct the view through the open door or place of entrance into any such house or place where intoxicating liquors are sold in quantities less than a quart." The same section defines "quiet house" in this language: "A quiet house or place of business, within the meaning of this act, is one in which no music, loud and boisterous talking, yelling, or indecent or vulgar language is allowed, used or practiced, or any other things calculated to disturb or annoy persons residing or doing business in the vicinity of such house or place of business, or those passing along the streets or public highway."

The eighth section of the same article provides: "The license required by this act shall be posted in some conspicuous place in the house where the business or occupation for which such license is necessary is carried on; and for a failure to so conspicuously post such license at or in such place of business, any person or any member of any firm or association of persons so failing shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not to exceed twenty-five dollars; and each day of such failure to so conspicuously post such license shall constitute a separate offense."

Sections 9 and 10 of the said article apply particularly to persons engaged as retail liquor dealers under the license required by the law.

The question presented is: was the Austin Club, in dispensing to its members and their guests liquors, in the manner stated, engaged in the "business of selling spirituous, vinous or malt liquors," within the meaning and intent of article 3226a, as above quoted?

In the case of Williams v. State, 23 Texas Ct. App., 499, and Standford v. State, 16 Ib., 331, the prosecutions were based upon article 110 of the Penal Code of this State, which is in the following language: "Any person who shall pursue or follow any occupation, calling or profession, or do any act taxed by law without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes so due, and not more than double that sum." In the cases cited above the court defined the word "occupation" as follows: "Occupation, as used in this statute and as understood commonly, will signify a vocation, calling, trade, the business which one principally engages in to procure a living or to obtain wealth. It is not the sale of liquor that constitutes the offense. It is the engaging in the business of selling without paying the occupation tax. It does not require even a single sale to

constitute the offense, for a person may engage in the business without succeeding in it, even to the extent of one sale."

In the case of Koenig v. State, 26 S. W. Rep., 835, the appellant had been prosecuted and convicted for playing cards in a club room at Cuero, which club was organized and conducted substantially under the same rules as in the case now before us. The indictment charged that the game was played with cards in "a house for retailing spirituous liquors," and the Court of Criminal Appeals in an able and exhaustive opinion by Presiding Justice Hurt, held that the club room was not "a house for retailing spirituous liquors" within the meaning of the statute. In announcing the conclusion arrived at by the court, the learned Judge said: "We are of opinion that upon authority and reason it must be held under the facts of the present case the transaction was not the sale of the liquor in the way of trade; that neither the association, its members nor its steward were engaged in the occupation of selling liquors. If this be true, was the club room a place for retailing liquors? * * * It is very clear both from the decisions we have cited and our statutes, that the club, its members or steward are not engaged in the occupation of selling liquors in quantities less than one quart." In the case before us no question is made as to this being a device to evade the law; it is, therefore, to be treated as a bona fide club, formed for the purposes expressed in its charter.

The question as to whether or not the transactions of dispensing liquors to the members and guests, as in this instance, constituted sales within the meaning of statutes prohibiting such sales, has been the subject of much judicial investigation, upon which there is a great conflict of authority, but that question is not involved in the case now presented to us, and we refrain from discussing it and will not undertake to review the many authorities, bearing upon it cited by the counsel for both parties in this case.

Clubs like this have been formed and maintained in many of the states, and in some of them the question now before the court has been adjudicated, upon which there is likewise a conflict of authority. But we believe that the decided weight of authority upon this question supports the conclusion arrived at by the Court of Criminal Appeals in the case of Koenig v. State, cited above, to the extent that the club was not engaged in the business of selling spirituous liquors. Martin v. State, 59 Ala., 34; Piedmont Club v. Commonwealth, 87 Va., 540; Club of Memphis v. Dwyer, 11 Lea (Tenn.), 452; State v. Boston Club (La.), 12 S. Rep., 895; Graff v. Evans, 8 Q. B. Div., 373.

It has been held on the other hand by courts of eminent ability and upon strong reasoning that persons engaged in like business, either as a voluntary association or as a corporation, were engaged in the business of selling spirituous liquors. U. S. v. Wittig, 2 Lowell, 466; People v. Soule, 74 Mich., 250; State v. Bacon Club, 44 Mo. App., 86.

The conditions of the bond requiring obligee to keep an open, quiet and orderly house or place for the sale of spirituous, vinous or malt

liquors, together with the provisions of the statute defining what are open and quiet houses, and the further provision requiring the posting of the license in a public place, indicates that the legislature intended that the business of selling spirituous, vinous or malt liquor should be conducted in a public place, open to all persons to enter therein and, to the observation of those passing by such place, and guarding against all of those things which would be calculated to lure the unsuspecting into such places, or to offend or corrupt those who might visit them. These provisions are inconsistent with the idea that the legislature was attempting to regulate the dispensing of liquors in the private manner shown by the facts of this case, but it shows that the business, as expressed in the article quoted, was intended to be a business conducted in a public manner and in a place to which the public would have free access as stated above. We think that this tends very strongly to support the position taken by the appellee in this case, that the language of the statute does not embrace the business transacted by this club.

Under the conditions of the bond required of persons engaging in the business of selling liquors and the provisions of the statute regulating the manner of conducting it, no license could be obtained to sell spirituous liquors in the private manner that it was done by this club and has been done by many other clubs in the State for many years. The conclusion must be drawn that the legislature either did not intend that such business as that conducted by the Austin Club should be embraced in the terms of the statute, or it did intend that all sales of a private character should be absolutely prohibited. We do not think that the latter conclusion can be drawn from this and other provisions of the Penal Code upon the subject of selling spirituous liquors. The Penal Code prohibits the sale of liquors under various other circumstances, as, for instance, all sales to Indians, to minors, and in local option districts, without regard to whether the person selling has a license therefor or not, and if the legislature intended to prohibit this class of business, if it be termed a business, it might easily have done so in plain and unambiguous language, as it has done with reference to the prohibited sales above stated.

Article 110 of the Penal Code was enacted for the purpose of enforcing the license law, and compelling persons pursuing the occupations which were taxed by the State to pay the taxes levied and to procure the license required. In fact it is the most efficient means provided for the collection of such taxes and the enforcement of the law. The Court of Criminal Appeals is the court of last resort in this State in criminal matters, and to its final judgment must be submitted all questions arising upon criminal prosecutions. The statute now being construed by us is so closely related to and dependent upon the criminal statute, article 110, Penal Code, that we feel constrained to follow the decision of the Court of Criminal Appeals in this matter, more especially as it is well supported by authority and, in fact, by the weight of authority, and considering all the provisions of our statute, as cited above, it is not clear

that the decision cited is not a correct statement of the law upon the question.

If we should hold that a club such as this, transacting its business in the manner that this did, was engaged in the business of selling spirituous liquors by retail we would in effect hold that the place where such club's business was being transacted was a house for the retail of spirituous liquors, and would be in direct conflict with the highest court in criminal matters in this State. If we were to hold that the appellee is liable for the taxes, then, if indicted under article 110, Penal Code, for selling without having procured license therefor, it would logically follow that, if the case of Koenig v. State is a correct enunciation of the law, the person dispensing the liquors for the club would not be liable to indictment for so doing and the Court of Criminal Appeals must so hold. Thus we would have the state of case in which one branch of this department of the State government would enforce the payment of a tax, and another branch of the same department would hold that such person was not liable for the tax, each court so holding being supreme in the sphere of its jurisdiction.

In this matter this court is situated differently from any of the courts of other states which have dealt with this subject, for the reason that this court is the court of last resort in civil matters, but has no jurisdiction in criminal matters, while in other states the same court had jurisdiction of matters both civil and criminal arising out of the matter in dispute. Harmony of decision between these courts is important and should be preserved where it can be upon proper principles, and in no case of doubt would we be willing to conflict with the decisions of that court in matters so nearly related and intimately connected with the subjects of its jurisdiction.

We, therefore, for these reasons and upon the authorities cited, answer that the Austin Club, in the transactions stated by the Court of Civil Appeals, conducted in the manner therein stated, were not engaged in the business of selling spirituous, vinous and malt liquors and medicated bitters.

We call attention to the fact that we have not considered in this opinion the difference between article 3226a and the act of the twenty-third legislature upon the same subject. (See Laws 23d Legislature, page 177.)