STATE v. W. C. WARD & SONS et al.

(Court of Civil Appeals of Texas. Feb. 4, 1911. Rehearing Denied March 4, 1911.)

1. STATUTES (§ 190*)—CONSTRUCTION—PRINCIPLES AND MAXIMS.

In seeking the legislative intent, the courts are not permitted to ignore the plain and unambiguous meaning of a statute and to give to it a meaning that its ordinary signification does not import.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 269; Dec. Dig. § 190.*]

2. INTOXICATING LIQUORS (§ 86*)—STATUTORY PROVISIONS — CONSTRUCTION — SCREENS — BOND—"OPEN HOUSE."

Acts 30th Leg. c. 138, § 15, requiring persons engaged in the sale of intoxicating liquors to be drunk upon the premises to give bond conditioned that they will keep an open house, and defining an "open house" as one in which no

screen or other devices are used inside or outside such house that will obstruct the view through the open door or place of entrance where the liquors are sold, does not require that ordinary doors used at such entrances shall be constructed of transparent material, and a failure to so construct them is not a breach of the bond, where there is no other screen or device to obstruct the view through the open door.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 86.*

For other definitions, see Words and Phrases, vol. 6, p. 4987.]

3. INTOXICATING LIQUORS (§ 88*)—LICENSE—BREACH OF BOND.

In an action on the bond of a liquor dealer, evidence *held* insufficient to establish a breach of the bond in failing to keep an open house, free from screens or other devices obstructing the view into the place where the liquors were sold, contrary to Acts 30th Leg. c. 138, § 15.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 88.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Prosecution by the State against W. C. Ward & Sons and others for violating an act of the Thirtieth Legislature approved April 18, 1907 (Acts 30th Leg. c. 138), known as the Baskin-McGregor law. From a judgment for defendants, plaintiff appeals. Affirmed.

Dwight Lewelling and R. M. Clark, for the State. Lively, Nelms & Adams and T. L. Camp, for appellees.

TALBOT, J. This suit was brought by the county attorney of Dallas county, in the name of the state of Texas, to recover of appellees, as obligors, upon a retail liquor dealer's bond, a penalty of $500 for an alleged failure to keep an open house as required by the act of the Thirtieth Legislature, approved April 18, 1907, and known as the "Baskin-McGregor law." A trial before the court without a jury resulted in a judgment for the defendants, and the plaintiff has appealed.

The retail liquor dealer's bond described in plaintiff's petition was executed by the defendants W. C. Ward & Sons, principals, and the Fidelity & Deposit Company of Maryland, as surety, as alleged in plaintiff's petition, and on or about the 8th day of May, 1909, said defendants, Ward & Sons, were lawfully engaged in the business of selling intoxicating liquors in quantities of one gallon and less in house No. 113 on McKinney avenue, in the city of Dallas, Tex. The front door of the building in which Ward & Sons were conducting their business was composed of wood with a small glass set in it about five feet from the floor, the exact size of which does not appear. The trial court found that it was between 8 and 15 inches in diameter, and the witness testifying in regard to it, as shown by the statement of facts sent to this court, said: "I don't think the glass that is in the door was as large as 15x18 inches. My recollection

is it was less than that. I don't know whether it was the size of my head in diameter or not. My remembrance is that the glass was clear." The door being of wood with the exception of the glass set in it, as stated, a person passing along on the street or sidewalk opposite the door could not see into the building without walking up to the door. The only witness testifying in relation thereto said: "I couldn't give the exact height of the wooden part of the door; but you couldn't see in because the glass was too high, except when you walked up to it. As I walked along the street and tried to see in, I could not do it." There was no screen or other device either on the inside or outside of the house which would obstruct the view of the interior of the house through the entrance into the same when the door was standing open. The time when the witness testifying in the case was at Ward & Sons' place of business and observed the things about which he testified was Sunday, the 8th day of May, 1909, and the door of the house was closed. The trial court held, as a matter of law, that, in order to constitute a breach of the liquor dealer's bond for failing to keep an open house, "it would be necessary for the dealer to place either inside or outside of his place of business a screen or other device which would either obstruct or partially obstruct the view through the door or place of entrance into any such house when the door or place of entrance was open; that it is not a violation of this condition of the bond for a liquor dealer to permit the door to his place of business to remain closed, even though the door should be made of solid material which prevented a view through the same." The appellant challenges the correctness of the trial court's construction of the statute upon the subject, and insists that "a liquor dealer, who at the place of entrance places or uses a door constructed of such material or painted in such manner as to obstruct a clear view into the interior of his place of business, violates the provisions of his bond to keep an open house."

Act 30th Leg. (Laws 1907, p. 262) § 15, requires every person desiring to engage in the sale of spirituous, vinous, or malt liquors or medicated bitters capable of producing intoxication, to be drunk on the premises, to give bond conditioned, among other things, that he shall keep an open house, and in the same section an "open house" is defined as follows: "An open house in the meaning of this chapter is one in which no screen or other device is used or placed inside or outside of such house or place of business for the purpose of, or that will obstruct the view through the open door or place of entrance into any such house or place where intoxicating liquors are sold to be drunk on the premises."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

The question is: Does this language of the statute apply to the ordinary door, a component part of the building itself, and used to close up the aperture or entrance made necessary to permit ingress and egress to and from such building? We think not. The statute does not admit of the construction, in our opinion, that it was the intention of the Legislature that the door, of which we have spoken, to the place of entrance into a saloon, should be made of some transparent substance so that when the door is closed a view might be had through the closed door. The statute prohibits the placing of any screen or device on the inside or outside of the house at which such a business is conducted, for the purpose or that will obstruct the view through the open door or place of entrance. Clearly, the door hung to the jamb of the entranceway, which constitutes a necessary part of the building itself, does not fall within the meaning of "screen" or "device" as those words are used in the statute, and it is manifest that "open door" and "place of entrance" are used interchangeably or as synonymous terms, having reference to the open entrance into the house when the swinging door is open or ajar. The ordinary door, placed in the entrance to a saloon and used in the way that such doors are usually used in business houses, whether it is constructed of such material as will, when closed, obstruct a clear view into the house or not, cannot be regarded, within the contemplation of the statute, as a contrivance or invention on the part of the liquor dealer to conceal from view the interior of his place of business.

No appellate court of this state, so far as we are advised, has passed upon the precise question, and zealous counsel have cited no parallel case. The case of Componovo v. State, 39 S. W. 1114, which seems to be most strongly relied upon by counsel for appellant, is not in point. In that case, on appeal, the trial court's charge was objected to on the ground that it authorized a recovery if there was a partial obstruction of the view into the house; the contention being that the obstruction as contemplated by the statute did not apply unless the whole counter is obstructed from the outside view by something placed on the inside of the house for that purpose, or calculated to obstruct the view. In holding against such a contention, this court said: "We think the construction placed upon the statute by counsel for appellants is too restrictive. The evident intention of the statute is that no obstruction, partial or otherwise, shall be placed in a retail liquor dealer's place of business to prevent those passing along the street from seeing what is taking place inside of the place of business, and any screen or device that materially defeats that object is unlawful." The only question here before the court and decided was that a partial obstruction of the view into a saloon by such a screen or device as contemplated by the statute was a breach of the liquor dealer's bond for which a recovery could be had. The question now before this court was not involved in the decision of that case and was not in the mind of the court when using the language: "The evident intention of the statute is that no obstruction, partial or otherwise (italics ours), shall be placed in a retail liquor dealer's place of business." The broad language used in the sentence quoted, namely, "no obstruction," partial or otherwise, can therefore possess any significance or force in determining the question now before us. The same may be said in regard to similar language used by Mr. Justice Brown, in the case of State v. Austin Club, 89 Tex. 20, 33 S. W. 113, 20 L. R. A. 500. The controlling question in that case was whether or not the Austin Club, organized in good faith for the promotion of social intercourse, etc., in selling intoxicating liquors, in a private manner only to its members and nonresident guests, but not with a view to profit, was liable under the facts shown for the tax imposed by article 3226a, Sayles' Rev. Civ. St. 1888, on persons engaged in the occupation of selling liquors. No such question as we have in the case at bar was involved in that case, and it seems that the reference therein to the statute requiring liquor dealers to keep an open house and its purposes, and to the statutory definition of "open house," was to show by way of illustration that the language of the particular statute which the court was then construing did not embrace the business as transacted by the Austin Club. It may be true, as contended by counsel for appellant, that, if it was the purpose of the lawmakers to require a liquor dealer to conduct his business in a public place, a place open to the observation of those passing by such place, it is idle to permit him to maintain a door in the premises through which the interior thereof cannot be seen, but the remedy lies with the Legislature and not the courts.

It is unquestionably a cardinal rule of statutory construction to ascertain the legislative intent and to give it effect; but in seeking such intent the courts are not permitted to ignore the plain and unambiguous language used in the statute and give to it a meaning that its ordinary signification does not import. This we would have to do, we think, in order to sustain appellant's contention in this case.

The trial court made the following finding of fact, viz.: "I further find as a fact that on either side of the above-described door (the front door to appellees' place of business) there was a glass window made of clear glass about 12 inches wide and about 5½ feet long through which a clear and unobstructed view of the entire interior of defendants' premises could be had." Appellant complains of this finding, and contends that the evidence was wholly insufficient to

warrant such conclusion, but, on the contrary, showed, without contradiction, that the view into the defendants' saloon through the front entrance viewed from the sidewalk was obstructed by a closed door. We concur in this view. The statement of facts before us does not, in our opinion, sustain the court's finding here complained of. The only testimony bearing upon the question is that of the witness McKnight, and is of a purely negative character. He said: "I did not notice a clear piece of glass on the right-hand side of the door and between it and the wall, and do not know whether it was there or not. I do not recall it. I observed none on the left-hand side.

For the reason that the evidence did not show that the defendants Ward & Sons had breached the condition of their bond by failing to keep an open house within the meaning of the statute, the district court rendered the proper judgment, and it is affirmed.