[No. 2005]

## STATE OF NEVADA, RESPONDENT, *v.* UNIVERSITY CLUB (A CORPORATION), APPELLANT.

1. INTOXICATING LIQUORS—LICENSES—SOCIAL CLUB—"BUSINESS."
   A *bona fide* social club, which disposes, at its clubhouse, of liquors to members and guests at a fixed charge as an incident to the general purposes of the club, the profit on the sales going to pay the general expenses of the organization, is not required to take out a license by Rev. Laws, 3377–3785, approved March 15, 1905, which provides for a license upon the business of disposing of intoxicating liquors; the term "business" in such statute meaning business in the trade or commercial sense.

APPEAL from Ninth Judicial District Court, White Pine County; *Mark R. Averill*, Judge, presiding.

Action by the State against the University Club, a corporation. From a judgment for plaintiff, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*Chandler & Quayle*, for Appellant:

A fundamental inquiry is whether or not the club under consideration is a *bona fide* club organized and conducted in good faith for social purposes; or whether, on the other hand, the club is a mere sham organized primarily for the purpose of selling liquor as a private business in evasion of the statutes. In the cases of the latter sort the courts are unanimous in holding the so-called clubs amenable to the license statutes.

Considering the great number of cases which have been decided on the question of the amenability of social clubs to liquor statutes, it will be helpful to classify these cases into the divisions in which they naturally fall by reason of the differences in the particular statutes under consideration.

Where the statute expressly names clubs as subject to its provisions, thereby showing the legislative intent to include them, clubs are, of course, held to be within the provisions of the statute.

Where the statute is absolutely prohibitive of any sale or other distribution of liquor, thereby showing the intent to absolutely prevent the sale, distribution or handling of liquor by any one, the courts have almost unanimously held that clubs are prohibited from selling, distributing, or handling liquor.

Where, however, the statute imposes a license on persons engaged in the "business" of selling liquors, it is held that social clubs are not required to take out such license, even though the language of some portion of the statute may be broad enough in itself to cover club transactions or to cover single sales of liquor, the holding in such cases being that social clubs are not engaged in the "business" within the meaning of the statute. Such cases are: *Cuzner* v. *California Club*, 100 Pac. (Cal.) 868, 20 L. R. A. (N. S.) 1095; *State* v. *Austin Club,* 33 S. W. (Tex.) 113, 30 L. R. A. 500; *Piedmont Club* v. *Commonwealth*, 12 S. E. (Va.) 963; *Barden* v. *Montana Club*, 25 Pac. (Mont.) 1043; *Manassas Club* v. *Mobile*, 25 South. (Ala.) 628; *Tennessee Club* v. *Dwyer*, 47 Am. Rep. (Tenn.) 298; *State* v. *New Orleans Club*, 40 South. (La.) 526; *Koenig* v. *State*, 26 S. W. (Tex. Crim. App.) 835; *State* v. *Duke*, 137 S. W. 654. This last principle is, of course, supported by the cases hereinafter mentioned, decided under statutes which do not expressly mention "business," but in which the courts hold that the intent of the statute was to apply only to those engaged in the "business."

The following cases, which were decided under statutes not involving the element of "business," and which hold

that a license is required of clubs or that prohibitive statutes had been violated by the club in the particular cases, nevertheless recognize the distinction between the statutes imposing the license on the "business" of selling liquors and cases decided under statutes not involving the element of business: *State* v. *Lockyear*, 59 Am. Rep. (N. C.) 287; *Martin* v. *State* (see *State* v. *St. Louis Club*), 59 Ala. 34; *State* v. *Boston Club*, 12 South. (La.) 895, 20 L. R. A. 185; *Kranvek* v. *State*, 41 S. W. (Tex.) 612; *State* v. *Shumate*, 29 S. E. (W. Va.) 1001; *U. S.* v. *Alexis Club*, 98 Fed. (Pa.) 725; *State* v. *Minnesota Club*, 119 N. W. (Minn.) 494, 20 L. R. A. (N. S.) 1101; *Ex Parte Bond*, 107 Pac. (Cal.) 143; *Nashville Club* v. *Shelton*, 56 S. W. (Tenn.) 838–840; *U. S.* v. *Wittig*, Fed. Cas. No. 16,748; *Ada County* v. *Boise Commercial Club*, 118 Pac. (Idaho) 1086.

But where the club in question is a *bona fide* social club and where the statute is not prohibitive, but is a license statute, and does not expressly mention social clubs and does not expressly impose a license tax on the "business" of selling liquors, but does impose a license tax on the sale of liquors, the courts are divided on the question as to whether or not the handling of liquor by social clubs constitutes technical sales, so as to bring the club within the provisions of the statute.

The bare reading of these sections (Rev. Laws, 3733, 3737) discloses, beyond a possibility of doubt, that the license tax is imposed on the transaction of the business of disposing of "any spirituous, malt or fermented liquors or wines in less quantities than one quart." Section 3733 only requires the license to be taken out "before the transaction of any such business," and it further requires that the license be taken from the sheriff of the county in which he or she proposes to do such business. By the terms of section 3737 it is provided that the license shall be procured immediately before the commencement of any business or occupation subject to license, and that such license shall authorize the party obtaining the same to transact business as specified

in the license, but shall not authorize any person to carry on any business in an incorporated city without also taking out the city license. The penal part of the section only makes it a misdemeanor for a person to "commence or continue to carry on or transact any business, trade, profession or calling for the transaction of or carrying on of which a license is required by this act, without procuring such license." And the section further authorizes such a suit as the one in the case at bar to be brought if any person required by the provisions of the act to take out a license shall fail to do so or shall carry on or attempt to carry on business without such a license. Under these provisions of the statute there can be no possible doubt that it was the intent of the legislature to impose the license tax on the transaction or carrying on of the business of disposing of liquors or wines in less quantities than one quart. It is further shown that the license was intended as a tax on the business from the provisions of sections 3740, 3742, and 3745.

*Cleveland H. Baker,* Attorney-General, *C. J. McFadden,* District Attorney, and *Charles R. Reeves,* for Respondent:

C. J. McFadden, district attorney of White Pine County, in the brief for respondent, cites the following cases in support of the liability of appellant for liquor licenses: *The Law and Order Club,* 62 L. R. A. 884; *City of Spokane* v. *Baughman,* 103 Pac. 14; *Lloyd* v. *Canon City,* 103 Pac. 288; *South Shore Club* v. *People,* 81 N. E. 805; *State* v. *Minnesota Club,* 119 N. W. 494; *State* v. *New Orleans,* 40 South. 526; *State* v. *Chesapeake Club,* 63 Md. 446; *State* v. *Eastern Swail Club,* 74 Md. 585; *People* v. *Andrews,* 6 L. R. A. 128; *People* v. *Soule,* 2 L. R. A. 494; 20 L. R. A. (N. S. ) 1095; *Marmont* v. *State,* 48 Ind. 21; *State* v. *Johns,* 118 N. W. 295; *U. S.* v. *Gillier,* 54 Fed. 656.

Charles R. Reeves, ex-district attorney, for respondent, cites the following additional authorities: *U. S.* v. *Alexis Club,* 98 Fed. 725; *U. S.* v. *Wittig,* 28 Fed. 744; *Butler* v. *Thompson,* 28 U. S. Sup. Ct. 684; *Army and Navy Club* v.

*District of Columbia*, 8 D. C. App. 544; *University Club* v. *Louisville*, 11 Ky. 902; *Kentucky Club* v. *Louisville*, 17 S. W. 743; *Nashville Club* v. *Sheldon*, 56 S. W. 838; *Brown* v. *State*, 114 S. W. 198; *Town of Phœbus* v. *Manhattan Social Club*, 52 S. W. 838; *State* v. *Shumate*, 29 S. E. 1001; *Martin* v. *State*, 59 Ala. 34; *Newark* v. *Essex Club*, 20 Atl. 764; *State* v. *Lockyear*, 59 Am. Rep. 287; *Nogales Club* v. *State*, 69 Miss. 218; *Marmon* v. *State*, 43 L. R. A. 398; *State* v. *Boston Pickwick Club*, 20 L. R. A. 185; *State* v. *Mercer*, 32 Iowa, 405; *State* v. *Bacon*, 44 App. 86; *Halkins* v. *State*, 114 S. W. 813; *Mainning* v. *Canon City*, 103 Pac. 288; *Ada County* v. *Boise Commercial Club*, 118 Pac. 1086; *Ex Parte Cutting*, 121 Pac. 305; *Bachelors Club* v. *City of Woodburn*, 119 Pac. 338; *Canon City Club* v. *People*, 121 Pac. 120.

By the Court, NORCROSS, J.:

This is an action brought by the state to recover from the appellant the sum of $377.50, alleged to be owing by appellant on account of state and county retail liquor licenses. Appellant denied liability for any such licenses. The case was tried upon an agreed statement of facts, and judgment rendered in favor of the state. From the judgment, the defendant has appealed. The case presents the question of the liability of a *bona fide* social club disposing of liquors to members and guests to pay the state and county retail liquor licenses.

It is provided in the articles of incorporation of the defendant company that "the corporation shall not be conducted for profit to its members and shall not have any capital stock." The management of the affairs of the club is in a board of trustees, consisting of seven members.

Article 3 of the articles of incorporation provides:

"The nature of the business and the objects and purposes proposed to be transacted, promoted and carried on by the said corporation are:

"1. To promote the social, intellectual and moral welfare of its members.

"2. To encourage, when practical, the establishment of scholarships in American institutions of learning.

"3. To assist in the growth and development of a liberal system of education.

"4. To advance the study of the sciences, arts and literature.

"5. To buy, own, acquire, sell, mortgage and lease real estate and personal property of all kinds and description necessary, incidental to or convenient for the objects and purposes of the said corporation as herein set forth and for the purpose of providing a meeting place for and the entertainment of the members of said corporation."

The constitution and by-laws of defendant corporation places restrictions upon its membership and those who may be admitted to its clubhouse as guests. The corporation maintains a clubhouse in the town of Ely as a place of meeting and for the comfort and entertainment of its members and guests. Visitors to the club are confined to nonresidents of Ely district, with the exception that a member may introduce to the club residents of the district not oftener than once in sixty days, nor more than two at any one time. At the clubhouse liquors are disposed of to members and guests at a fixed charge as an incident to the general purposes of the club. Whatever profit is made upon sales of liquor goes to pay the general expenses of the organization. That the defendant is in every respect what is frequently mentioned in decisions as a *bona fide* social club is conceded.

An act supplementary to the general revenue act "and to provide for a state license upon the business of disposing at retail or wholesale of spirituous, malt or vinous liquors in this state, and providing penalties for violation hereof," approved March 15, 1905 (Rev. Laws, 3777–3785), in so far as the same is material to a consideration of the questions involved in this case, provides:

"On the first day of July, A. D. one thousand nine hundred and five, and annually thereafter on January first, every person, firm, company or corporation manufacturing or selling, either at retail or wholesale, any

spirituous, malt or vinous liquors shall, in addition to the licenses now provided by law, take out a state liquor license as hereinafter provided, which license shall not be transferable by sale, assignment or otherwise. * * *"

"SEC. 3. The several sheriffs of the respective counties of this state are hereby made the collectors of, and authorized and required to issue and collect, said licenses, and shall, upon the payment of fifty ($50) dollars, issue a retail state license to any person, firm, company or corporation engaged in selling spirituous, malt or vinous liquors in quantities less than five gallons. * * *"

Section 121 of the general revenue act (Rev. Laws, 3733) provides: "Any person or persons who may dispose of any spirituous, malt or fermented liquors or wines, in less quantities than one quart, shall, before the transaction of any such business, take out a license from the sheriff of the county in which he or she proposes to do such business, and pay therefor the sum of ten dollars per month. * * *"

The following section, relative to the license upon hotels, innkeepers, restaurants, and the like, contains the provision: "Nothing in this section shall be so construed as to include the right to sell spirituous or malt liquors and wines, but the same shall be distinct and separate business therefrom, and require separate and exclusive license therefor." (Rev. Laws, 3734.)

The question of the liability for license of social clubs which dispose of liquors to members and guests has been frequently before the courts. Many of the cases turn upon the question of *bona fides* of the organization as a social club. The decisions are unanimous in holding that sham organizations for the purpose of evading license, but in reality conducted for profit, are liable for license. Other cases, considering the liability of *bona fide* social clubs which dispense liquors to their members and guests, turn upon the language of the statute under consideration. Where the statute imposes a license upon the sale of liquors, as distinguished from a license upon the business of disposing of liquors, the authorities are not

entirely in accord as to the liability of a *bona fide* social club for liquor license.

The federal internal revenue liquor law provides: "Every person who sells or offers for sale foreign or domestic distilled spirits or wines in less quantities than five wine gallons at the same time shall be regarded as a retail dealer in liquors." (U. S. Rev. Stats. 3244; U. S. Comp. St. 1901, p. 2097.)

Considering the liability of an incorporated social club to pay the federal license, McPherson, J., in *U. S. v. Alexis Club* (D. C.), 98 Fed. 725, said: "The question has usually arisen upon the construction of a law licensing the sale of intoxicating drink, and the decisions that declare the transaction not to be a sale have naturally and properly been much influenced by the language of the particular law, and also by the fact that such a statute is generally, perhaps always, a penal statute, which punishes a violation of its provisions by fine and imprisonment, and is therefore to be construed strictly in favor of the accused. When such a statute speaks of a 'dealer,' or of a 'dramshop keeper,' or of 'selling by retail,' or of 'the business of selling,' without defining these terms, the task of definition falls upon the trial court; and there may then be little difficulty in concluding that a social club does not 'deal' in liquors, or is not engaged in the 'business' of selling, within the common meaning of these words. * * * But section 3244 of the Revised Statutes differs in an important particular from the statutes that were construed in these cases, and in some others that are cited upon the defendant's brief. This section declares expressly what is meant by a retail 'dealer,' and necessarily implies what is meant by a 'sale.' Every person is a retail dealer 'who sells or offers for sale foreign or domestic distilled spirits or wines in less quantities than five wine gallons at the same time.' Nothing is said about selling as a business, or selling as an innkeeper; nor is there any other limitation of the words 'sells or offers for sale' than the single limitation concerning the quantity to be sold at one

time. In the face of language so clear, there is no room
for construction. In my opinion, the plain meaning is
that a single sale of spirits or wines, by any person, in a
smaller quantity than five wine gallons, constitutes the
seller a retail dealer in liquors, and makes him liable to
pay to the United States a special tax of $25."

Where, as in this state, the statute imposes a license
on persons engaged in the "business" of selling liquors,
the courts have universally held that *bona fide* social
clubs are not liable to take out such a license, for the
reason that they are not engaged in the "business,"
within the meaning of the statute. (*Cuzner* v. *California
Club*, 155 Cal. 303, 100 Pac. 868, 20 L. R. A. 1095; *State* v.
*Austin Club*, 89 Tex. 20, 33 S. W. 113, 30 L. R. A. 500;
*Piedmont Club* v. *Commonwealth*, 87 Va. 540, 12 S. E. 963;
*Barden* v. *Montana Club*, 10 Mont. 330, 25 Pac. 1042, 11
L. R. A. 593, 24 Am. St. Rep. 27; *Manassas Club* v. *Mobile*,
121 Ala. 561, 25 South. 628; *Tennessee Club* v. *Dwyer*, 11
Lea, 452, 47 Am. Rep. 298; *State* v. *New Orleans Club*, 116
La. 46, 40 South. 526; *Koenig* v. *State*, 33 Tex. Cr. R. 367,
26 S. W. 835, 47 Am. St. Rep. 35; *State* v. *Duke*, 137
S. W. 654.)

As said in the Cuzner case, *supra*, "the term 'business,'
as used in a law imposing a license tax on business,
trades, professions, and callings, ordinarily means a busi-
ness in the trade or commercial sense; one carried on
with a view to profit or livelihood."

Mr. Black, in his work on Intoxicating Liquors, reviews
the authorities and makes therefrom the following deduc-
tions: "Upon the whole, therefore, notwithstanding some
conflicting rules, the rational conclusion is that the intent
must govern. On the one hand, if the object of the
organization is merely to provide the members with a
convenient method of obtaining a drink when they desire
it, or if the form of membership is no more than a pre-
tense, so that any person, without discrimination, can pro-
cure liquor by signing his name in a book or buying a ticket
or a chip, thus enabling the proprietor to conduct an illicit
traffic, then it falls within the terms of the law. But, on

the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary, artistic, or other purposes, to which the furnishing of liquor to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or the letter of the law." (Black on Intoxicating Liquors, sec. 142.)

While the question involved in this case is presented for the first time to this court, it has heretofore been presented to the attorney-general's office for an opinion. From an opinion of the attorney-general, found on page 71 of the biennial report for the years 1907–1908, we quote: "In view of the foregoing provision of the statutes of this state, and of the weight of authority to the effect that clubs or associations organized in good faith for lawful social enjoyment, under the usual rules, owning property, having a board or committee for the government of its affairs, limiting or restricting its membership to a certain number or class, requiring individual members to possess certain qualifications, and charging an admission fee or dues, do not come within the purview of similar statutes, I am of the opinion that no such club or organization in Nevada, in the absence of further municipal regulation, is liable for such license under the present law."

The title of the act relative to state liquor licenses, the form of the license prescribed in said act, and the provisions of the statute relative to county liquor licenses specifically refer to the "business" of disposing of liquors by retail or wholesale. (Rev. Laws, 3733, 3734, 3777, 3778, *supra.*)

The term "business," as used in these statutes, clearly, we think, means business in the trade or commercial sense, as held by the courts construing similar statutes.

As the question is one entirely subject to legislative control, the legislature can, if it so desires, amend the

law so as to require licenses from social clubs the same as it now requires the same from persons engaged in the business of selling liquors.

The judgment is reversed.

TALBOT, C. J.: I concur.

McCARRAN, J., having become a member of the court after the argument and submission of the case, did not participate in the foregoing opinion.