

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN

~~XXXXXXXXXXXXXXXXXXXXXX~~

ATTORNEY GENERAL

Honorable John D. Reed, Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:

Opinion No. O-4560
Re: Under the facts submitted, does a
labor organization, not chartered
under the laws of Texas, come with-
in the provisions of our Employment
Agency Law?

You have requested the opinion of this department
upon the question stated above, based upon the following
statement of facts:

1. There has been common practice for a
good many years among labor organizations to
have the business agent of the organization to
act as a placement officer for the union. In
other words, where a contractor for a private
corporation has to use union labor the demands
for employees by the private corporation are
handled through the business agent. For in-
stance, if 300 carpenters are needed the con-
tractor contacts the business agent and makes
known his need for employees and these employees
are referred to the job by the business agent.

2. All unions have initiation fees and
dues to become a member and to remain a member
in good standing.

3. Labor unions are generally organized
for the purpose of improving the social and
financial condition of its membership by the
use of collective bargaining.

4. No additional charge or special assess-
ment is made or collected for the employment
service rendered by the organization.

5. Only bona fide members are assisted in
securing employment.

6. The union maintains, from the initiation fees, dues, fines, etc., such services as insurance for its members, social entertainments, and negotiations, and contracts covering wages, working hours, and safety conditions of its members, both those who do and those who do not avail themselves of its employment services, alike.

7. There is no difference in the amount of money paid by the members who are assisted in securing employment and those who secure their own employment.

8. The contractor who is assisted in securing workers pays nothing directly or indirectly for this service, as it is common practice for those contractors using only union labor to enter into an agreement with the labor union that the labor union will supply him with all needed workers, provided nothing but union labor is used.

9. There is no penalty involved if a member who is referred by his union to a job refuses to take it.

The Texas Employment Agency Law is contained in Title 83, Chapter 13, Articles 5208-5221, Vernon's Revised Civil Statutes of 1925, and Title 18, Chapter 7, Articles 1584-1593, Vernon's Revised Penal Code of 1925. These statutes are from House Bill No. 13, Acts 1923, 38th Legislature, Reg. Sess., as amended. This act provides, in its first two sections:

"Section 1. That no person, firm, partnership or association of persons shall engage in or carry on the business of employment agent in this State without first having obtained a license therefrom from the Commissioner of Labor Statistics of the State of Texas.

"Section 2. The term 'Employment Agent' as used in this Act shall mean every person, firm, partnership or association of persons engaged in the business of assisting employers to secure employes, and persons to secure employment, or of collecting information regarding employers seeking employees, and persons seeking employment; provided, the provisions of this Act shall not apply to agents who charge a fee of not more than two dollars ($2.00) for registration only, for procur-

ing employment for school-teachers; nor to any department or bureau maintained by the State of Texas, the United States Government, or any municipal government of this State, nor to any person, firm, partnership, association of persons or corporation or any officer or employee thereof engaged in obtaining or soliciting help for him, them or it when no fees are charged directly or indirectly of the applicant for help or from the applicant for employment. Provided, that the provisions of this Act shall not apply to farmers and stockraisers acting jointly or severally in securing laborers for their own use where no fee is collected or charged directly or indirectly, nor to any association or corporation chartered under the laws of Texas conducting a free employment bureau or agency.

"The term 'Employment Office' shall mean every place or office where the business of giving intelligence or information where employment or help may be obtained, or where the business of an employment agent is carried on."

Other provisions prescribe the requirements for securing a license, fix the license fee, require a bond of the licensee, prescribe grounds for cancellation of the license, provide for examination by the Commissioner of Labor Statistics of books and records of the licensee, prescribe criminal penalties for violations of the Act, and otherwise strictly regulate the business of the licensed employment agent.

It will be noted from the provisions quoted above that the Employment Agency Law applies, not to all those who assume the responsibility of securing employment for others, or of securing employees for others, but only to those who are "engaged in the business of assisting employers to secure employes, and persons to secure employment, or of collecting information regarding employers seeking employees, and persons seeking employment". And, since the particular labor organization which you have in mind is not chartered under the laws of Texas, it becomes necessary to determine whether, under the facts stated, it is "engaged in the business" described.

We have made a careful search of the reported decisions of this and other jurisdictions, and have found no case in which the exact question here presented is decided. However, we find a close analogy between this case and those in which the State has sought to bring bona fide golf and social clubs, selling liquors to their members in good faith as an incident to the social life of the club, within the provisions

of the liquor dealers license laws; and we think it pertinent to note the Texas decisions in such cases:

In the case of State v. Austin Club, 33 S.W. 113, decided by the Supreme Court in 1895, the State charged that the Austin Club was engaged in the business of selling spirituous, vinous and malt liquors in quantities less than one quart, and sought to collect from it the occupation taxes levied against retail liquor dealers. The agreed statement of facts showed (1) that the Austin Club was a bona fide club, incorporated under the laws of Texas for the purpose of "the encouragement of social intercourse among its members, the support of literary undertakings and cultivation of literature, the maintenance of a library and reading room, and the promotion of fine arts"; (2) that the club maintained a billiard room and reading rooms; (3) that it from time to time purchased in bulk spirituous liquors and medicated bitters and through its authorized agent and employee, retailed same to its members, and to its members only, in quantities less than one quart, and at an agreed price per drink; (4) that each member of the club paid for the quantity of spirituous liquors, etc., which he called for and consumed; and (5) that the club did not sell liquors, etc., for profit, and the money arising from such sales to members was placed in the treasury of the club, and only used for expenses of the club and replenishing the stock of liquors. The statute under which the State claimed the tax was as follows:

"* * * 'Hereafter there shall be levied upon and collected from any person, firm or association of persons engaged in the business of selling spirituous, vinous or malt liquors, or medicated bitters, an annual tax upon every such occupation or separate establishment, as follows: For selling spirituous, vinous or malt liquors, or medicated bitters, in quantities of less than one quart, three hundred dollars.'"

In holding against the State's contention, the Court said:

"* * * If we should hold that a club such as this, transacting its business in the manner that this did, was engaged in the business of selling spirituous liquors by retail, we would, in effect, hold that the place where such club's business was being transacted was a house for the retail of spirituous liquors, and would be in direct conflict with the highest court in criminal matters in this state.* * *" Koenig v. State, 26 S. W. 835.

In the case of State v. Duke, 137 S. W. 654, the Supreme Court again had before it the question whether a club, selling liquors to its guests, was engaged in the business of selling intoxicating liquors. Approving the decisions in the Austin Club and Koenig cases, cited above, the Court held:

"That a bona fide club, situated in a precinct, city, or town where liquor may be lawfully sold, organized for purposes permitted and sanctioned by law, which as a mere incident to its organization and without profit furnishes liquor to its members and not to the public generally, is not a person, under the laws of this State, engaged in the occupation or business of selling intoxicating liquors.

"That while each individual act of such a club, in territory where the sale of liquor is prohibited by law, is a sale, in territory where such sale is not unlawful, the method in question of furnishing liquors to the members of such club is not embraced in the general language of selling or engaging in the business of selling intoxicating liquors.

"That in respect to clubs not organized in good faith for purposes authorized by law, but merely as shifts, shields, or subterfuges, such sales would not be permitted, and under such circumstances they would and should be held to be disorderly houses and subject to all the pains and penalties of the law."

In Country Club v. State, 214 S.W. 296, the State sought, among other things, to enjoin the Country Club from selling intoxicating liquors to its members and guests without procuring a license as a retail liquor dealer. The Supreme Court states the facts of the case as follows:

"* * * * *.

"The case was tried on an agreed statement of facts, showing in substance that the club was incorporated in good faith, to support and maintain a golf club, and other innocent sports in connection therewith; that the club owned a clubhouse and golf course, worth some $35,000, all of which were used exclusively by the members of the club and their guests; that the club maintained a buffet, for the purpose of selling and

dispensing intoxicating liquors to its members and their guests only, not for the purpose of profit and not in the way of trade or business; that the club was not maintained as a device or scheme to evade any liquor or license laws of the state or of any subdivision thereof; that the dispensation and sale of liquor to members and guests of the club were merely incidental to its lawful corporate purposes and for the enjoyment and convenience of the club members and guests; that the club premises were not within local option territory, nor situated where the sale of intoxicating liquors was forbidden by any state or municipal law."

Again the Court held that the sale of intoxicating liquors by a bona fide social club to its members (and guests, too, in this instance), as an incident to its other lawful activities, did not constitute engaging in the business of selling intoxicating liquors at retail, and pointed out with approval the holdings in the Duke case, quoted above.

From the facts upon which your inquiry is based, as stated above, it appears that the labor union in question is maintaining a free private employment service for its members only, as a proper complement of its general purpose to elevate the economic status of its members, and that in view of such facts and under the reasoning of the cases herein cited, such a labor organization is not "engaged in the business" of assisting employers to secure employees, and person to secure employment, or of collecting information regarding employers seeking employees, and persons seeking employment, within the meaning of the Employment Agency Law. We are the more inclined to this view because this law is penal in character, and must be strictly construed.

It is therefore our opinion that the labor organization in question does not come within the provisions of our Employment Agency Law. We wish to emphasize, however, the fact that this opinion is based upon the facts of this case, as herein stated, and under a different state of facts the question might be answered differently. Certainly, to paraphrase the language of the Court in the Duke case, supra, any labor union or other association or corporation, not organized and conducted in good faith for purposes authorized by law, but merely as a shift, shield, or subterfuge for carrying on the business of an employment agency without procuring a license therefor, would be subject to all the pains and penalties of the law.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/W. R. Allen
W. R. Allen
Assistant

WRA:nw:wc


APPROVED AUG 28, 1942
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman