### ED. WINTERS V. THE STATE.

*No. 329.      Decided May 26.*

1. **Playing Cards in a Public House or a House for Retailing Spirituous Liquors—Club Room.**—On a trial for playing cards, where the count in the indictment charged that the playing was in a public place, to wit, in a house for retailing spirituous liquors, and the evidence showed that the playing was in the club room of an incorporated social club, that the liquor sold belonged to the club, was sold only to members of the club, and the money for which it was sold was used to keep up and replenish the stock of liquor for the club, *Held,* the conviction was not sustained by the evidence. Following Koenig v. The State, ante, p. 367.

2. **Same—Room Attached to a House for Retailing Liquor, and Commonly Resorted to.**—On a trial for playing cards, under a count in the indictment which charged a playing in a public place, to wit, a room attached to a house for retailing spirituous liquors, and commonly resorted to, and used for gaming purposes, *Held,* the mere fact that the club room in which the playing was done was up-stairs over a saloon would not make it necessarily, in contemplation of the statute, a room attached to the saloon, where it is not used in any way so as to fix its character as a room attached to said saloon; nor would the fact that there was an inside stairway and dumb-waiter connecting the two do so, if in fact they were never used by the members of the club or by the public.

APPEAL from the County Court of De Witt. Tried below before Hon. O. L. CROUCH, County Judge.

The indictment contained two counts: First, unlawfully playing at a game with cards in a public place, to wit, a house for retailing spirituous liquors; second, playing cards in a public place, to wit, a room above and attached to a house for retailing spirituous liquors, and commonly resorted to and used by people for gaming.

At his trial appellant was convicted, and his punishment assessed at a fine of $10.

The case is fully stated in the opinion.

*Crain, Kleberg & Grimes,* and *Pleasants & Bailey,* for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—This is a conviction under an indictment containing two counts. The first charged that appellant played at a game with cards in a public place, to wit, at a house for retailing spirituous liquors. The second, that he played at a game with cards in a public place, to wit, in a room above and attached to a house for retailing spirituous liquors, and commonly resorted to and used by people for gaming. Only one witness testified in the case, and the substance of his testimony is that the game was played in a room upstairs, above and attached to Meurin's saloon, the saloon being a place where liquors are sold. The room is used for a club room by an incorporated club. The witness had seen Mr. Meurin and his brother in the club room, and had seen them sell liquors to the members of the club. The two Meurins belonged to the club. The club has from fifteen to twenty-five members. The witness is informed, but does not know of his own knowledge, that the liquors kept in said room belonged to the club, and the money taken from members for liquors is used to replenish the stock. The witness is a member of the club. He paid fifty cents when he became a member, and signed his name in a book. He has never paid any dues or anything since. He explains, that "Mr. Meurin never charged me anything for liquors that I got in the bar below." The witness further expresses the opinion that the club is a bona fide institution, and is not organized to evade the law. Liquor is only sold to members. The club pays no occupation tax, and does not pursue the sale of liquor as a business. He does not know the name of the club. Below the club room is Mr. Meurin's bar, but that has no business connection with the club room. There is a stairway inside of the building, leading from the lower to the upper story, but it is not used by the members in reaching the club room. The club room is reached by an outside stairway. There is also a dumb-waiter, but it is not used. The club keeps newspapers and periodicals for the use of members. The witness does not know if the room is a place where persons resort for the purpose of gaming or not. He has seen persons play there at cards for drinks, but not for money. He has been a member about twelve months, and every time he was there cards were played.

By the charge the jury were instructed, that if defendant played cards in a room over Meurin's saloon, and that said room was used as a place for retailing spirituous liquors, he should be convicted. In so far as the case involves the right of a social club to dispense liquors to its members, the decision of this court in the case of Koenig v. The State (ante, p. 367) covers it; and we may dismiss that matter by reference to that decision, and the remark that had the jury, under proper instructions, reached the conclusion that this club was a mere

device or evasion, this court would not disturb the verdict. The facts being further developed on another trial, a different case may be presented.

On the second count the court charged the jury: "If you believe that defendant did play at a game with cards in a room attached to a house for retailing spirituous liquors, and commonly used for gaming, you should convict." While this is the language of the statute, we think that, under the facts in evidence, it was calculated to mislead the jury. The issue is, was there any connection between the saloon of Meurin and the so-called "club room," in the way of business or use? Do the patrons of the saloon, other than members of the club, resort to the club room? Is the club room used in any way so as to fix its character as a room attached to the saloon? Are liquors sent from the saloon to the room? These are all questions of fact for the jury to determine under proper instructions. The mere fact that the room is up-stairs over the saloon does not make the first attached to the second, within the meaning of the statute. Nor would the fact that there was an inside stairway and dumb-waiter connecting the two do so, if in fact the stairway and waiter are never used by the members of the club or by the public.

The charges we have noticed were all the instructions given the jury, and the defense requested special instructions upon the various phases of the case that we have mentioned. The court refused them, and bills of exceptions were reserved. The requested charges were in harmony with the views herein expressed, and should have been given.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.