## STATE OF TEXAS v. J. C. DUKE ET AL.

### No. 2261.   Decided May 17, June 23, 1911.

**1.—Intoxicating Liquors—License Tax—Clubs.**

 A bona fide club licensed for purposes permitted or sanctioned by law, such as a golf or country club as usually conducted, situated in a locality where liquor may lawfully be sold, which, as a mere incident to its purposes and not for profit, furnishes to its members, and not to the public generally, liquor bought with the club funds and paid for by the members ordering it as served, is not subject to the state tax imposed upon persons selling intoxicating liquors. (Acts, 23d Legislature, ch. 121; Acts, 30th Leg., ch. 138; Acts, 31st Leg., 1st Extra Sess., ch. 17.) (Pp. 359-378.)

**2.—Same—Disorderly House—Injunction.**

 The keeping and sale of liquors by a corporation to its members as a mere incident to the purposes of a golf or country club, though without payment of the

tax imposed on liquor sellers, does not constitute the club or its officers or employees keepers of a disorderly house (a house where "liquors are sold or kept for sale without first having obtained a license under the laws of the State to retail such liquors") under Article 359, Revised Statutes as amended by Act of April 18, 1907, Laws, 30th Leg., p. 246, nor subject to be enjoined from so doing under article 362b, Revised Statutes, passed by said Act.   (Pp. 369-378.)

### 3.—Same—Statutory Construction.

The rule of strict construction applied to penal statutes, the history of the changes in statutes, the cotemporary history of the habits and activities of the people, the decisions construing the language of former laws, and the construction adopted by the executive officers of the State, are considered in arriving at the interpretation of statutory language.   (Pp. 369-376.)

### 4.—Selling Liquor—Federal License.

Applying for and receiving a federal internal revenue license for retailing intoxicating liquors, though made by the law prima facie evidence (Penal Code, art. 407a) does not estop the holder from showing that he was not engaged in the business of selling intoxicating liquors within the meaning of the state statutes on that subject.   (P. 377.)

### 5.—Cases Discussed, Distinguished, etc.

Koenig v. State, 33 Texas Crim., 367; State v. Austin Club, 89 Texas, 20; Williams v. State, 23 Texas App., 499; Standford v. State, 16 Texas App., 331; Cohen v. State, 53 Texas Crim., 422; Krnavek v. State, 38 Texas Crim., 44; Feige v. State, 49 Texas Crim., 513; Jaliff v. State, 53 Texas Crim., 61; Bumbaugh v. State, 56 Texas Crim., 331; Tacchini v. State, 126 S. W., 1139; Sweeney v. State, 128 S. W., 390; Todd v. State, 131 S. W., 606; Morford v. State, 131 S. W., 569; Cassidy v. State, 58 Texas Crim., 454; and numerous cases in other states, discussed, distinguished or explained.   (Pp. 363-376.)

Questions certified from the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

*R. M. Clark,* County Attorney, *Currie McCutcheon,* Assistant, and *Barry Miller,* for appellant.—The selling of intoxicating liquor by a bona fide incorporated club to members of said club and their guests at a stipulated price per drink, the club having theretofore purchased said liquors in bulk quantities with money from the general fund of the club, is a sale.  Feige v. State, 95 S. W., 507; Krnavek v. State, 41 S. W., 612; Finn v. State, 41 S. W., 1102; People v. Soule, 2 L. R. A., 494; United States v. Geller, 54 Fed., 656; Kentucky Club v. Louisville, 17 S. W., 743; State v. Boston Club (La.), 20 L. R. A., 185; Nogales Club v. State (Miss.), 10 So., 514; State v. Essex Club (N. J.), 20 Atl., 769; State v. Neis (N. C.), 13 S. E., 225; State v. Shumate (W. Va.), 29 S. E., 1001; State v. Lockyear, 95 N. C., 633.

The selling or keeping for sale of spirituous, vinous or malt liquors by the agents or employees of an incorporated club means the selling and sale as is understood by the common and ordinary use of the word sale; selling and sale being distinguished from pursuing the occupation of a retail liquor.  Article 359 of the Penal Code, as amended in 1907; article 3226 (A), Sayles' Revised Statutes; Acts of the Twenty-Third Legislature, page 177; State of Texas v. Austin Club, 89 Texas, 20; Penal Code, art. 9; Code of Criminal Procedure, art. 58; Revised Statutes, art. 3268, sec. 6; Fitch v. State, 127 S.

W., 1040; United States Comp. Statutes (1901), sec. 3244, subdiv. 4; Ex parte Vaccarezza, 105 S. W., 1123.

An incorporated club can not under the law as it now exists sell intoxicating liquors to its members with or without a license, and can not obtain a license so to do. Acts of the Thirty-First Legislature, page 294, sec. 1 (commonly called the Robertson-Fitzhugh Bill).

That a sale of intoxicating liquor made by any person, directly or indirectly, is in violation of the law, unless such person has previously taken out a license to make such sale according to the provisions of the Robertson-Fitzhugh Bill. Acts Thirty-First Leg., p. 294.

Any house in which intoxicating liquors are sold without a license is a disorderly house. Penal Code, art. 359, as amended in 1907.

Where a statute is reenacted and different words are used, it is presumed that a different construction was intended. Endlich on the Interpretation of Statutes, p. 534, par. 382; Burgess v. Hargrove, 64 Texas, 110; Rich v. Keyser, 54 Pa. St., 83; San Antonio & A. P. Ry. Co. v. S. W. T. & T. Co., 55 S. W., 117.

An omission in a later Act of words used in an earlier one and not supplied by any natural sense of the words employed or suggested by the interaction of some other rule of construction, can not be read into the later statute so as to restrict its operation. Endlich on Int. of Stats., p. 536, par. 384; Schley v. Hale, 1 App. C. C., par. 933, 2 App. C., par. 58.

An incorporated club, which through its president makes affidavit before the internal revenue collector of the United States that he wishes as president of said club "to engage in the business or occupation of a retail liquor dealer" at the said club, and under said license operates a bar at the club house of said club and retails intoxicating liquors to the members of said club at a fixed price per drink, is estopped from denying that he or the said club is conducting the business of a retail liquor dealer. Penal Code, art. 407a.

*Jewel P. Lightfoot,* Attorney-General, and *C. E. Mead,* Special Counsel, also for appellant.—The manner in which this club dispenses intoxicating liquors to its members constitutes said transactions sales, within the meaning of the laws of this State.

The manner in which said intoxicating liquors are dispensed by said club constitutes said club a retail liquor dealer within the meaning of the Act of the Thirty-First Legislature, known as the Robertson-Fitzhugh Law.

The manner in which said club dispenses intoxicating liquors constitutes said Golf and Country Club a creator and promotor of a public nuisance within the meaning of the Act of the Thirtieth Legislature, Laws, 1907, page 166, and subject to be enjoined at the suit of the State, as provided in said Act.

The manner and circumstances under which said club dispenses intoxicating liquors, as shown by the agreed statement of facts, constitutes the place of business of said appellee a disorderly house as denounced by the Acts of the Thirtieth Legislature, Laws 1907, page 246, as amended by the Third Called Session of the Thirty-First

Legislature, page 32, and subject to be enjoined at the suit of the State as provided by said Act.

The agreed statement of facts shows that the Dallas .Golf and Country Club is a domestic corporation chartered for the purposes "to support and maintain the royal and ancient game of golf and other innocent sports." The use of its funds, assets and property to purchase and dispense intoxicating liquors to its members, as. shown in the agreed statement of facts, constitutes such use a diversion and misuser of the funds and assets of said corporation within the meaning of and as defined in section 5, chapter 166, page 309, Acts of the Thirtieth Legislature, thereby authorizing the forfeiture of its charter, and said acts afford grounds to enjoin said corporation from so dispensing intoxicating liquors, at the suit of the State, as was prayed for in the .petition.

The fact that the situs of the club is within a part of the city of Dallas where the sale of intoxicating liquors, either under a license or otherwise, is prohibited under the charter and laws of the city of Dallas, thereby constitutes the appellee to be a creator and promotor of a public nuisance and may be enjoined at the suit either of the county or district attorney in behalf of the State, as provided by chapter 81, page 166, Acts of the Thirtieth Legislature, and as construed in the case of the State v. Paul, 106 S. W., 448.

Also the fact that said club has procured and posted in a conspicuous place where such liquors are dispensed a license issued by the United States of America authorizing said· club to pursue the occupation and business of ·a retail liquor dealer, constitutes the place of business of said club a disorderly house, as defined by the Act of the Thirtieth Legislature, chapter 132, page 346, as amended by the Third Called Session of the Thirty-First Legislature, chapter 14, page 32, and the injunction applied for should have been granted.

Authorities under foregoing propositions: Sections 1, 2, 4, 6, 33 and 34 of Acts of 31st Legislature, Laws of 1909, page 293; Acts of 23d Legislature, p. 177; Acts 30th Legislature, Laws 1907, p. 166; Acts of 30th Legislature, Laws 1907, p. 246; Acts of 31st Legislature, 3d Called Session, p. 32; Acts of 31st Legislature, Laws 1909, p. 51; Acts of 31st Legislature, Laws 1909, p. 53; Acts of 31st Legislature, Laws, 1909, p. 119; Acts of 31st Legislature, Laws 1909, · p. 284; Acts of 31st Legislature, Laws 1909, p. 356; Acts of 31st Legislature, 3d Called Session, p. 27; Acts of 31st Legislature, 3d Called Session, p. 32; Acts of 30th Legislature, Laws 1907, sec. 5, chap. 166, p, 309; O'Connor v. State, 71 S. W., 411; Sutherland's Statutory Construction, sec. 411; Turner v. Cross, 83 Texas, 218; Archer v. State, 10 Texas App., 482; Paul v. State, 106 S. W., 448; Goodwin v. Clark, 65 Me., 280; State v. Wells, 28 Mo., 565; State v. Austin Club, 89 Texas, 20; Casady v. State, 126 S. W., 600; Morford v. State, 131 S. W., 568; Sweeney v. State, 128 S. W., 390; Joyce on Int. Liq., sec. 607; Feige v. State, 95 S. W., 507; Krnavek v. State, 41 S.· W., 612; Finn v. State, 41 S. W., 1102; People v. Soule, 2 L. R. A., 494; United States v. Geller, 54 Fed., 656; Kentucky Club v. Louisville, 17 S. W., 743; State v. Boston Club (La.), 20 L. R. A., 185; Nogales Club v. State (Miss.), 10 So., 514; State

v. Essex Club (N. J.), 20 Atl., 769; State v. Neis (N. C.), 13 S. E., 225; State v. Shumate (W. Va.), 29 S. E., 1001; State v. Lockyear, 95 N. C., 633.

*Etheridge & McCormick,* for appellees.—When the evidence was in, which consisted of an agreed statement of facts, and it appeared therefrom that the Dallas Golf & Country Club, as directors of which the appellees were charged, had not been engaged in the business of selling intoxicating liquors at retail, the court properly refused to grant the injunction prayed for. State v. Austin Club, 89 Texas, 20; Koenig v. State, 33 Texas Crim. App., 367; Ex parte Woods, 52 Texas Crim. App., 575; 124 Am. St. Rep., 1107, 16 L. R. A. (N. S.), 450; Winters v. State, 33 Texas Crim. App., 395; Joliff v. State, 109 S. W., 177; Bumbaugh v. State, 120 S. W., 424; Cassidy v. State, 126 S. W., 600; Tacchina v. State, 126 S. W., 1139; Sweeney v. State, 128 S. W., 390; Todd v. State, 131 S. W., 606; Morford v. State, 131 S. W., 569.

*Hexter & Kramer,* by permission, also filed brief for appellees.— The use of the words "sold or kept for sale" in the Disorderly House Act, upon which this suit is predicated, relates to the selling or keeping for sale of intoxicating liquors in the course of business, and since the evidence discloses that the Dallas Golf and Country Club, of which appellees were charged as directors, were not engaged in such business, the court properly denied the injunction prayed for. State v. St. Louis Club, 125 Mo., 308, 26 L. R. A., 573; State v. Austin Club, 89 Texas, 20; Koenig v. State, 33 Texas Crim. App., 367; Ex parte Woods, 52 Texas Crim. App., 575; Joliff v. State, 109 S. W., 177; Bumbaugh v. State, 120 S. W., 424; Cassidy v. State, 126 S. W., 600; Todd v. State, 131 S. W., 606; Morford v. State, 131 S. W., 569; Adams & Wickes v. Water Co., 86 Texas, 485.

*Cobb & Avery,* not of counsel for these appellees, also filed printed argument by permission.

MR. JUSTICE RAMSEY delivered the opinion of the court.

The particular questions involved in this case, and the facts out of which they arise, will appear from the certificate transmitted to this court by the Court of Civil Appeals for the Fifth Supreme Judicial District. It is as follows:

"This is a suit brought by the State of Texas against J. C. Duke, Robert Ralston, F. D. Cochran, C. L. Dexter, A. G. Wood, A. H. Cleaver and H. L. Edwards, to enjoin them from keeping an alleged disorderly house. The petition charges that the defendants are residents of Dallas County, Texas, and are directly concerned in keeping, aiding, assisting and abetting in keeping a disorderly house, to wit, a house in which spirituous, vinous and malt liquors are sold and kept for sale without the said J. C. Duke, Robert Ralston, T. D. Cochran, C. L. Dexter, A. G. Wood, A. H. Cleaver or H. L. Edwards first having obtained a license under the laws of the State of Texas to retail such liquor; that said house is located in the city of Dallas and known as the Dallas Golf and Country Club, and that the defendants are now and for some time past have been in the actual and habitual use and occupancy of the above described premises for

the purpose of keeping and aiding and abetting in keeping said disorderly house, in open violation of law. The material facts, which are agreed to by the parties, are as follows: The Dallas Golf and Country Club was duly incorporated under the laws of the State of Texas in the year 1900, and the defendants were at the time of the institution of this suit, and now are, the directors of said club. The purpose for which the corporation was created and organized is "to support and maintain the royal and ancient game of golf and other innocent sports." Shortly after its organization the corporation purchased and has improved a plat of land in the city of Dallas, used by it for a club house and golf course, consisting of about fifty-five acres, of the reasonable value of $150,000, which lies wholly within the limits of the city of Dallas and without the saloon limits of the city. Said club erected a club house on the grounds for the convenience of the members prior to 1907. In 1907 a fire occurred, which destroyed the club house and a new one has been constructed. This club house is used exclusively by the members of the club and their guests, and in connection with it the club uses a quantity of household and kitchen furniture and a library, consisting of several hundred books, and maintains in it a housekeeper and a steward and a corps of servants, and maintains a cafe for the service of meals if called for by and only by its members, and for the sole use of themselves and their invited guests. The club is composed of 393 members, and the defendant, J. C. Duke, is its president. Since the date of the incorporation of said club it has from time to time purchased in bulk quantities of spirituous, vinous and malt liquors capable of producing intoxication, and through its authorized agents and employees retailed same to its members in quantities of one gallon or less at an agreed price per drink, and has continuously so done to date. Spirituous, vinous and malt liquors are now kept for sale at the said club to be sold exclusively to members of the said club. Each member of said club pays for the quantity of spirituous, vinous and malt liquors he calls for and consumes. Only members of said club are permitted to purchase in any quantity from said club or its agents or employees the liquors, but members are permitted and do invite their friends to said club, and these invited guests are permitted to drink the liquors with the club members. The members purchase the said liquors and not the guests. The club, nor any of its officers, directors, agents or employees, have not paid the annual taxes levied on every person by the State of Texas who sells or keeps for sale spirituous, vinous or malt liquors capable of producing intoxication, the said club having no license under the laws of the State of Texas, nor any of the aforesaid persons, to retail said liquors at the above described and located club house or place. The said club has continuously since its incorporation paid internal revenue license to the United States as a retail liquor dealer. On June 30, 1910, the said club, with J. C. Duke as president, took out an internal revenue license from the United States to engage in the business or occupation of retail liquor dealer at the said club house, said license being for the duration of one year. This license was obtained upon the affidavit of one of the agents of the club as is required by Federal

Law.  The said license is now posted upon the barroom in a promi-
nent place at the said club house.  The club sells only the best grade
of whiskies, and the price charged therefor is twenty-five cents for
two drinks or fifteen cents for one drink, and beer it sells in bottles
for fifteen cents per pint and twenty-five cents per quart.  The per-
sons named in the plaintiff's petition agree to the club's action in
dispensing the said liquors as is herein set out, and the persons agree
for the said liquors to be kept for sale at the said club house, as is
herein set out.  Upon a member being elected to membership in
said club he at once has all the bar privileges and may at once obtain
from the agents and employees of the said club spirituous, vinous
and malt liquors by paying the club prices for them.  The said
drinks and intoxicating liquors are not ordered in advance by the
individual members of the club, but the particular liquors may be
had on demand by the individual members.  Not only is this the
present custom, but this has been done by the club and its members
since the incorporation of the club.  The club does not sell spirituous
liquors for profit, nor does it sell anything for profit, nor is it organ-
ized for profit, and the money arising from the sales of spirituous
liquors, as well as that arising from the sales of food to the members
for their own use and that of their invited guests, is placed in the
treasury of the club and is only used for the expenses of the club and
the replenishing of the stock of liquors, grocery supplies, etc.  No
dividend has ever been paid or can be paid on the stock of the cor-
poration, but the stock is only issued for the purpose of showing the
interest of the members of the club in its property, to the proceeds
of which the stockholders would be entitled in proportion to their
holds on the liquidation of the club and the sale for that purpose
of its property.  The club has lost, in consequence of dispensing
liquors to its members, the sum of at least $4,000.  The membership
is limited to 500.  The club keeps on hand for the use of its mem-
bers the latest and most advanced literary periodicals and magazines,
and a library of miscellaneous books, and has placed its club under
the management of a House Committee, consisting of three members,
who see that the club is closed every night at 12 o'clock.  Each mem-
ber of the club is required to pay dues at the rate of $36 per annum,
and before he can become a member must pay an initiation fee of
$50, have his name posted for one week before he is voted on, and
purchase stock of the value of $200, and if objection is made in the
ballot by one member, the proposed candidate can not become a
member of the club.  The club was incorporated in good faith for
the purposes mentioned therein, and was not incorporated as a device
or scheme to avoid the payment of any tax of the State of Texas,
county of Dallas or city of Dallas.  The club has been continuously
operated and conducted with a view solely to furnishing to its mem-
bers and their invited guests facilities for playing the game of golf,
which is a game played only in the daytime, and the playing of
which is attended with fatigue, making it beneficial as a form of
exercise, as well as amusing from the skill required in playing it.
The fatigue resulting from the playing of this game induces appetite
and thirst, and the provisions and liquors furnished by the club to

its members are only incidental to the playing of the game, and the library and other reading matter supplied are so supplied for the same purpose; that is, to serve the comfort of players while waiting for an opportunity to play or resting from· the fatigue incident to golf. That the premises of the club are not in local option territory, and that no person other than members, their families and guests, and the servants of the club are permitted on the premises.

"A trial of the case before the court on February 18, 1911, resulted in a judgment denying the injunction prayed for and the plaintiff perfected an appeal to this court. There seems to be quite a conflict in the decisions on the principal questions of law arising upon the appeal, and in view of that fact and of the importance of the matter involved, we deem it advisable to certify the questions set out below to the Honorable Supreme Court of Texas for adjudication.

"Question 1. It not appearing that the defendants, or either of them, had been engaged in the business of selling intoxicating liquors, was the injunction properly denied?

"Question 2. If the writ of injunction was not properly denied on the ground that it did not appear that the defendants were engaged in selling intoxicating liquors as a business, then was the dispensing of intoxicating liquors to the members of the Dallas Golf and Country Club in the manner and for the consideration shown by the facts stated a sale of such liquors within the meaning of article 359 of the Act of the Thirtieth Legislature, approved April· 18, 1907, Laws 1907, page 246?"

In a brief filed on behalf of the State, while recognizing that the questions specifically certified involve a determination whether or not under article 359 of the Penal Code, Acts Thirtieth Legislature, page 246, the State is entitled to the relief sought, we are nevertheless urged to consider and determine whether or not under other provisions of the law the injunction prayed for should not be granted. To this suggestion we shall accede. We are, as we should be, on certified questions limited to the precise matters involved therein, but a decision of these questions involves the other questions presented and discussed by counsel.

The first question propounded is: "It not appearing that the defendants, or either of them, had been engaged in the business of selling intoxicating liquors, was the injunction properly denied?" To correctly answer this question involves a construction of the article above referred to and· also certain of the provisions of the Robertson-Fitzhugh law enacted by the Thirty-First Legislature.

Before the enactment of these laws it was, among other things, provided that "hereafter there shall be levied upon and collected from any person, firm or association of persons engaged in the business of selling spirituous, vinous or malt liquors or medicated bitters, an annual tax upon every such occupation or separate establishment as follows: For selling spirituous, vinous or malt liquors or medicated bitters, in quantities less than one quart, three hundred dollars." Sayles' Statutes, article 3226. There was also a provision of the Penal Code which made it an offense to play cards in any

house for retailing spirituous liquors, the two articles covering same being as follows:

"Article 379 (355). If any person shall play at any game with cards, at any house for retailing spirituous liquors, storehouse, tavern, in or any other public house, or in any street, highway or other public place, or in any outhouse where people resort, he shall be fined not less than ten nor more than twenty-five dollars."

"Article 380 (356). All houses commonly known as public, and all gaming-houses, are included within the meaning of the preceding article. Any room attached to such public house and commonly used for gaming, is also included, whether the same be kept closed or open. A private room of an inn or tavern is not within the meaning of public places, unless such room is commonly used for gaming; nor is a private business office, or a private residence to be construed as within the meaning of a public house or place; provided, said private residence shall not be a house for retailing spirituous liquors."

The relation of clubs, organized in good faith for purposes allowed by law, which as an incident to their existence furnished liquors to their members with no intent or idea of deriving gain therefrom came before the Court of Criminal Appeals in the case of Koenig v. The State, 33 Texas Crim. Rep., 367, 47 Am. St., 35. The question for decision in that case is thus stated by Judge Hurt, who wrote the opinion of the court: "The playing of a game of cards being an admitted fact, the question is narrowed to this: Was the club room in question a house for retailing spirituous liquors within the meaning of article 355, Penal Code? That article reads: "If any person shall play at any game with cards at any house for retailing spirituous liquors, storehouse, tavern, inn, or any other public house, or in any street, highway, or other public place, . . . he shall be fined." The next succeeding article is explanatory, and reads: "All houses commonly known as public, and all gaming houses, are included within the meaning of the preceding article. Any room attached to such public house and commonly used for gaming is also included, whether the same be kept closed or open. A private room of an inn or tavern is not within the meaning of public places, unless such room is commonly used for gaming; nor is a private business office or a private residence to be construed as within the meaning of the public house or place; provided, said private residence shall not be a house for retailing spirituous liquors." After a thorough and elaborate review of many authorities he says: "We are of the opinion that, upon authority and reason, it must be held, under the facts of the present case, the transaction was not a sale of the liquor in the way of trade, and that neither the association, its members, nor its steward were engaged in the occupation of selling liquors. If this be true, was the club room a place for retailing liquors? 'To retail' in this connection must mean 'to sell in small quantities.' 'A house for retailing' must mean 'a house where the liquors are sold in small quantities in the way of trade.' Again, our statutes regulating the sale of spirituous liquors recognize the distinction between selling liquors at retail and otherwise as an occupation. It is very clear, both from the decisions we have cited and our statutes,

that the club, its members, or steward, are not engaged in the occupation of selling liquors in quantities less than one quart. In the case made by the facts, it is equally clear that no question of evasion of the laws, or of a device to conceal the real objects, purposes and acts of the association, arises in this case. The dispensing of liquors to the members is but incidental, and for the purpose of adding to the pleasure and comfort of the members. Again, reference to the statutes shows that the places and houses named, and those intended to be embraced, are all 'public.' The statute contemplates public houses and public places. W'as the club room of the association either? None but members and their guests could enter there or share its privileges. So long as this rule was enforced it was not public, and the evidence shows that the rule was strictly observed. We conclude that the evidence does not show that defendant played cards at a house for retailing spirituous liquors, within the meaning of the statute." That opinion was rendered on May 19, 1894. On December 9, 1895, thereafter the opinion of this court in the case of the State of Texas v. Austin Club, 89 Texas, 20, 30 L. R. A., 500, was handed down. That case, as the official reports indicate, was thoroughly briefed by counsel of recognized ability. The opinion contains intrinsic evidence that it was carefully considered. The facts of that case were practically identical with the case at bar. Indeed, one can scarcely escape the conclusion that in preparing the certificate and the agreed statement of facts both the court and the parties must have done so with this case before them. It was there held in an opinion by the present chief justice of this court that "the license tax imposed on persons engaged or engaging in the business of selling spirituous liquors" does not apply to a club organized under the general incorporation laws for the "encouragement of social intercourse among its members," although spirituous liquors were bought and dispensed without profit to its members. "The State can not recover license against such clubs under article 3380, Revised Statutes. (3226a, Sayles' edition.)" In discussing the matter Judge Brown, among other things, there said:

"The question presented is: Was the Austin Club, in dispensing to its members and their guests liquors, in the manner stated, engaged in the 'business of selling spirituous, vinous or malt liquors,' within the meaning and intent of article 3226a, as above quoted?

"In the case of Williams v. State, 23 Texas App., 499, and Standford v. State, 16 Texas App., 331, the prosecutions were based upon article 110 of the Penal Code of this State, which is in the following language: 'Any person who shall pursue or follow any occupation, calling or profession, or do any act taxed by law without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes so due, and not more than double that sum.' In the cases cited above the court defined the word 'occupation' as follows: 'Occupation, as used in this statute and as understood commonly, will signify a vocation, calling, trade, the business which one principally engages in to procure a living or to obtain wealth. It is not the sale of liquor that constitutes the offense. It is the engaging in the business of selling without paying the occupation tax.

It does not require even a single sale to constitute the offense, for a person may engage in the business without succeeding in it, even to the extent of one sale.'

"In the case of Koenig v. State, 33 Texas Crim., 367, 26 S. W., 835, the appellant had been prosecuted and convicted for playing cards in a club room at Cuero, which club was organized and conducted substantially under the same rules as in the case now before us. The indictment charged that the game was played with cards in 'a house for retailing spirituous liquors,' and the Court of Criminal Appeals in an able and exhaustive opinion by Presiding Judge Hurt, held that the club room was not 'a house for retailing spirituous liquors' within the meaning of the statute. In announcing the conclusion arrived at by the court, the learned judge said: 'We are of opinion that upon authority and reason it must be held under the facts of the present case the transaction was not the sale of the liquor in the way of trade; that neither the association, its members nor its steward were engaged in the occupation of selling liquors. If this be true, was the club room a place for retailing liquors? . . . It is very clear both from the decisions we have cited and our statutes, that the club, its members or steward are not engaged in the occupation of selling liquors, in quantities less than one quart.' In the case before us no question is made as to this being a device to evade the law; it is, therefore, to be treated as a bona fide club, formed for the purposes expressed in its charter.

"The question as to whether or not the transactions of dispensing liquors to the members and guests, as in this instance, constituted sales within the meaning of statutes prohibiting such sales, has been the subject of much judicial investigation, upon which there is a great conflict of authority, but that question is not involved in the case now presented to us, and we refrain from discussing it and will not undertake to review the many authorities bearing upon it cited by the counsel for both parties in this case.

"Clubs like this have been formed and maintained in many of the States, and in some of them the question now before the court has been adjudicated, upon which there is likewise a conflict of authority. But we believe that the decided weight of authority upon this question supports the conclusion arrived at by the Court of Criminal Appeals in the case of Koenig v. State, cited above, to the extent that the club was not engaged in the business of selling spirituous liquors. Martin v. State, 59 Ala., 34; Piedmont Club v. Commonwealth, 87 Va., 540; Club of Memphis v. Dwyer, 11 Lea (Tenn.), 452, 47 Am. Rep., 298; State v. Boston Club (La.), 12 S. Rep., 895, 20 L. R. A., 185; Graff v. Evans, 8 Q. B. Div., 373.

"It has been held on the other hand by courts of eminent ability and upon strong reasoning that persons engaged in like business, either as a voluntary association or as a corporation, were engaged in the business of selling spirituous liquors. United States v. Wittig, 2 Lowell, 466; People v. Soule, 74 Mich., 250, 2 L. R. A., 494; State v. Bacon Club, 44 Mo. App., 86.

"The conditions of the bond requiring obligee to keep an open, quiet and orderly house or place for the sale of spirituous, vinous or

malt liquors, together with the provisions of the statute defining what are open and quiet houses, and the further provision requiring the posting of the license in a public place, indicates that the Legislature intended that the business of selling spirituous, vinous or malt liquor should be conducted in a public place, open to all persons to enter therein and, to the observation of those passing by such place, and guarding against all of those things which would be calculated to lure the unsuspecting into such places, or to offend or corrupt those who might visit them. These provisions are inconsistent with the idea that the Legislature was attempting to regulate the dispensing of liquors in the private manner shown by the facts of this case, but it shows that the business, as expressed in the article quoted, was intended to be a business conducted in a public manner and in a place to which the public would have free access as stated above. We think that this tends very strongly to support the position taken by the appellee in this case, that the language of the statute does not embrace the business transacted by this club.

"Under the conditions of the bond required of persons engaging in the business of selling liquors and the provisions of the statute regulating the manner of conducting it, no license could be obtained to sell spirituous liquors in the private manner that it was done by this club and has been done by many other clubs in the State for many years. The conclusion must be drawn that the Legislature either did not intend that such business as that conducted by the Austin Club should be embraced in the terms of the statute, or it did intend that all sales of a private character should be absolutely prohibited. We do not think that the latter conclusion can be drawn from this and other provisions of the Penal Code upon the subject of selling spirituous liquors. The Penal Code prohibits the sale of liquors under various other circumstances, as, for instance, all sales to Indians, to minors, and in local option districts, without regard to whether the person selling has a license therefor or not, and if the Legislature intended to prohibit this class of business—if it be termed a business—it might easily have done so in plain and unambiguous language, as it has done with reference to the prohibited sales above stated.

"Article 110 of the Penal Code was enacted for the purpose of enforcing the license law and compelling persons pursuing the occupations which were taxed by the State to pay the taxes levied and to procure the license required. In fact, it is the most efficient means provided for the collection of such taxes and the enforcement of the law. The Court of Criminal Appeals is the court of last resort in this State in criminal matters, and to its final judgment must be submitted all questions arising upon criminal prosecutions. The statute now being construed by us is so closely related to and dependent upon the criminal statute, article 110, Penal Code, that we feel constrained to follow the decision of the Court of Criminal Appeals in this matter, more especially as it is well supported by authority and, in fact, by the weight of authority, and considering all the provisions of our statute, as cited above, it is not clear that

the decision cited is not a correct statement of the law upon the question.

"If we should hold that a club such as this, transacting its business in the manner that this did, was engaged in the business of selling spirituous liquors by retail we would in effect hold that the place where such club's business was being transacted was a house for the retail of spirituous liquors, and would be in direct conflict with the highest court in criminal matters in this State. If we were to hold that the appellee is liable for the taxes, then, if indicted under article 110, Penal Code, for selling without having procured license therefor, it would logically follow that, if the case of Koenig v. The State is a correct enunciation of the law, the person dispensing the liquors for the club would not be liable to indictment for so doing and the Court of Criminal Appeals must so hold. Thus we would have the state of case in which one branch of this department of the State government would enforce the payment of a tax, and another branch of the same department would hold that such person was not liable for the tax, each court so holding being supreme in the sphere of its jurisdiction.

"In this matter this court is situated differently from any of the courts of other States which have dealt with this subject, for the reason that this court is the court of last resort in civil matters, but has no jurisdiction in criminal matters, while in other States the same court had jurisdiction of matters both civil and criminal arising out of the matter in dispute. Harmony of decision between these courts is important and should be preserved where it can be upon proper principles, and in no case of doubt would we be willing to conflict with the decisions of that court in matters so nearly related and intimately connected with the subjects of its jurisdiction."

This opinion has never been challenged, its correctness questioned or its binding force made a matter of dispute to this hour. On the contrary, in the case of Cohen v. The State, 53 Texas Crim., 422, 110 S. W., 67, it is referred to and in terms approved. The Koenig case, supra, has been followed consistently and has been many times approved.

It was, however, suggested in argument that the authority of this case has been substantially impaired, if not, indeed, overruled, in the later case of Krnavek v. State, 38 Texas Crim., 44, and Feige v. State, 49 Texas Crim., 513, 95 S. W., 506. We think this contention clearly not well taken. In the Krnavek case it was held that in respect to a transaction arising in territory where local option was in force, that a sale of intoxicating liquors, bought with the money of, and belonging to, an incorporated social club, by the managing steward or barkeeper of the club to any member of same, is a sale and transfer of the property from the corporation to the individual member. The opinion in that case was written by Judge Hurt, who had also written the opinion of the court in the Koenig case. He clearly distinguishes the two cases as well as the opinion of the court in the Austin Club case. To illustrate and demonstrate the correctness of our statement we make the following liberal quotation from the opinion in the Krnavek case:

"The court's definition of a sale, so far as this case is concerned, is sufficient. The special charges requested by defendant were based upon the theory that the sale of the intoxicants by the defendant to members of the club did not constitute a violation of the local option law, under the facts of this case; and in support of this contention he cites us to the following cases: Koenig v. State, 33 Texas Crim. Rep., 367; Winters v. State, 33 Texas Crim. Rep., 395; Grant v. State, 33 Texas Crim. Rep., 527; State v. Austin Club, 89 Texas, 20, 33 S. W. Rep., 113. In Koenig's case this court held that where a party was charged with playing cards at a public place, to wit, a house where spirituous liquors were retailed, and the evidence showed that it was a private chartered corporation, selling intoxicants to only its members, the money paid for the same being turned into and used as a general fund to replenish the stock of liquors of said corporation when needed, such a house was not one for retailing spirituous liquors, and a public house, under the statute inhibiting the playing of cards at such place. In support of the same contention, the other cases cited by appellant decided by this court are in point. In the case of State v. Austin Club, supra, the question there decided was that a club thus created was not subject to the license imposed by the Act of the Legislature on the occupation of retailing spirituous liquors.

"The authorities referred to are not in point as to this case. The question in the Austin Club case was whether or not the business was taxable as an occupation, and the question in the cases decided by this court was whether or not the parties indicated were playing cards at a place for retailing spirituous liquors, the same being a public place, under the statute. In both cases it was a question whether or not the parties were engaged in the business or pursued the occupation. In neither case were intoxicants sold as a business or occupation, or to the public; they were sold simply to the members of the club, and the public was excluded. License fees are imposed by the State only on the sale of intoxicants when pursued as an occupation. That question is not involved in this case. The question here is whether the sale of intoxicants by the managing steward or barkeeper of the club to one of the members of said club is a sale. We are of opinion that it is. When the intoxicants were bought by the steward or any other member of the club with the funds of the club they became the property of the corporation, and a sale by the steward of said corporation to any of its members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer of the same to an individual member, for which he either paid the cash, or became responsible therefor. As testified in this case, this transaction between defendant and the alleged purchaser was brought fairly and clearly within the definition of 'sale,' as that term is defined in all the law books. This is not a case where parties contribute sums of money and purchase intoxicants therewith, and divide them pro rata among themselves; but it is a transaction where the common assets of a continuing business are used to replenish the goods sold in that business. The distinction drawn between this case and the cases above cited is recognized in the Koenig case, supra. It was there said: 'The members did not own the liquors, although

they claimed to own them. The money received went to the pretended treasurer, who rendered no account to the members. Anyone could become a member by paying a dollar.' The court correctly held that the jury were warranted in finding it a mere device to evade the law. The case does not conflict with those above. In said case this court refers to Marmont v. State, 48 Ind., 21, and said: 'It was there distinctly held that the delivery by the club, through its agent, of beer, which was the common property of the society, to a member of the society, upon credit or for cash, and which thereby became the separate property of the member, was a sale, within the meaning of the statutes of that State.' And it was so held in Alabama and North Carolina. See Black on Intox. Liq., sec. 142; People v. Andrews, 115 N. Y., 427, 6 L. R. A., 128, 22 N. E. Rep., 358; People v. Sinell, 58 Hun, 607, 12 N. Y. Supp., 40; People v. Bradley (Sup.), 11 N. Y. Supp., 594; State v. Essex Club, 53 N. J. Law, 99, 20 Atl. Rep., 769; Martin v. State, 59 Ala., 34; People v. Soule, 74 Mich., 250, 2 L. R. A., 494, 41 N. W., 908; Kentucky Club v. City of Louisville (Ky.), 17 S. W. Rep., 743.

"In regard to the question of pursuing this character of business in a local option precinct, the license laws are inoperative, and the State is prohibited from collecting the tax imposed on the occupation of retailing spirituous liquors. Not only so, but where the local option law is put in operation, and parties are carrying on that character of business, the license is revoked at once, and provision is made for restoring the pro rata measure of the amount paid the State for the privilege of carrying on that business. This emphasizes the statement that the Koenig case, supra, and those that follow it, can not apply to a case similar to this case."

This being the state of the law at the time of the passage of the amendment to the disorderly house statute, and the enactment of our more recent Legislature regulating the sale of liquors, the question arises whether by any or all of these later Acts a different rule has been instituted. We must assume that the Legislature which enacted these later laws were familiar with the decisions of this court and of the Court of Criminal Appeals. Being so familiar and being advised that under the settled law of this State that our taxing laws had no application to bona fide clubs, in territory where intoxicating liquors were by law permitted to be sold, did the Legislature intend to institute a different rule and by the language used has it done so? It has been not infrequently held that in determining the scope and effect of legislation and in ascertaining the intent and purpose of the Legislature, we must have some regard to and should recur to the history of the times. This view was thus expressed in the case of Ex parte Roquemore, 131 S. W., 1101, where it is said: "Further it is a rule of construction well known that, in undertaking to fix and place meaning upon statutes, we should do so in the light of contemporaneous history, and in reference to the habits and activities of our people." The same general idea is found in many books, coupled not infrequently with a consideration of a former prevailing policy of the State. Thus in Klein v. Livingston, 177 Pa. St., 224, 34 L.

R. A., 94, 35 Atl. Rep., 606, it is said: "Probably, at the date of this Act, club organizations, wherein liquor was furnished, as here, had been in existence in large towns and cities for fifty years. The Legislature was not ignorant of the fact; if such use tended to disorder or bad morals, the Legislature knew it; if such use was not of immoral tendency, yet was a luxury or privilege that would bear taxation and yield revenue, they knew that fact; yet there are no words in the Act which, by any possible construction, can be stretched into a prohibition of the use of liquor in clubs, or that can be deemed as requiring they shall be licensed. There is, in fact, no express legislation concerning this distinctive, open, notorious, long existing use of liquor; the plain implication is that the consumption of liquor in clubs, as known to the Legislature, was not deemed a sale. The general words of the law, however, make the sale of liquor without license illegal everywhere in the commonwealth; and whether this be a sale is now a judicial and not a legislative question." This same fair and just rule of construction is thus stated in People v. Adelphi Club, 149 N. Y., 5, 43 N. E., 410, 31 L. R. A., 510, 52 Am. St., 700: "In this connection the construction placed upon a statute penal in character, by public officers charged with the duty of executing its provisions for many years, may properly be considered in determining the legislative intention. Potter, Dwar. St., 183, 184; People v. Dayton, 55 N. Y., 367-378; Brown v. United States, 113 U. S., 568, 5 Sup. Ct., 648. Upon this subject the evidence shows that clubs in this State have existed for a long period, that they have not been required to take out a license, and yet it is a well known, fact that they have kept on hand stocks of liquors which they distributed to their members. Was it then intended that the distribution of liquors by a club among its members should be a sale, within the contemplation of the statute? If so, commissioners of excise, police officers, and district attorneys have for many years neglected their official duties." A clear statement of the same rule is found in the opinion of the Supreme Court of Missouri, State v. St. Louis Club, 125 Mo., 308, 28 S. W., 604, 26 L. R. A., 573, where Judge Gantt, one of the greatest of modern judges, uses this language: "But it seems to us that inasmuch as this club has been organized since 1878, it is not created for profit and that the Legislature must have been cognizant that many similar organizations had been created under the same statute, and if it had been the intention to require them to take out a liquor license it would have made some provision for it, or provided a license tax suitable to the case, as they can not under the Dramshop Act exercise their other corporate rights. The club has pursued this method of providing refreshments for some fifteen years. Its right seems never to have been challenged before, although the Dramshop Act has remained substantially the same all these years."

Again, it is an admitted rule established in all the courts and not questioned by counsel that these provisions of the law, being penal in their character, must be strictly construed. Now, bearing in mind these rules and having reference to conditions and facts known to the Legislature, let us consider the effect of the recent statute adopted

in 1907 referred to by the Court of Civil Appeals in its certificate. It is as follows: "Article 359. A bawdy house is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. A disorderly house is any assignation house or any theater, playhouse or house where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity are employed, kept in service, or permitted to display or conduct themselves in a lewd, lascivious or indecent manner, or to which persons resort for the purpose of smoking, or in any manner using opium, or any house in which spirituous, vinous or malt liquors are sold or kept for sale without first having obtained a license under the laws of this State to retail such liquors.

"An assignation house is a house, room or place where men and women meet by mutual appointment, or by appointment made by another for the purpose of sexual intercourse, whether at such place vinous, spirituous or malt liquors are kept for sale or are used or not."

The Act was further amended on August 19, 1910, which Act is as follows:

"Article 359. A bawdy house is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation. A disorderly house is any assignation house or any theater, playhouse where spirituous, vinous or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity are employed, kept in service, or permitted to display or conduct themselves in a lewd, lascivious or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium, or any house in which spirituous, vinous or malt liquors are sold or kept for sale without first having obtained a license under the laws of this State to retail such liquors; or any house located in any county, justice precinct or other subdivision of a county where the sale of intoxicating liquor has been prohibited under the laws of this State, in which such nonintoxicating malt liquor is sold or kept for the purpose of sale as requires the seller thereof to obtain internal revenue license under the laws of the United States as a retail malt liquor dealer; or any house located in any county, justice precinct or other subdivision of a county in which the sale of intoxicating liquor has been legally prohibited, where the owner, proprietor or lessee thereof has posted license issued by the United States of America, authorizing such owner, proprietor or lessee thereof to pursue the occupation and business of a retail liquor dealer or a malt liquor dealer.

"Any assignation house is a house, room or place where men and women meet by mutual appointment, or by appointment made by another, for the purpose of sexual intercourse, whether at such place vinous, spirituous or malt liquors are kept for sale or are used or not."

"Section 2. The fact that there is no adequate remedy to suppress disorderly houses where nonintoxicating malt liquor is sold in local option territory creates an emergency and an imperative necessity that the constitutional rule requiring bills to be read on three several days

be suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

The purpose of this last Act was, as stated in section two thereof, "to suppress disorderly houses where nonintoxicating malt liquor is sold in local option territory," and as to such territory it is, in article 359, as there amended, provided such Act shall apply to and stamp as of the nature and quality of a disorderly house, "any house located in any county, justice precinct or other subdivision of a county where the sale of intoxicating liquors has been prohibited under the laws of this State, in which such nonintoxicating malt liquor is sold or kept for the purpose of sale as requires the seller thereof to obtain internal revenue license under the laws of the United States as a retail malt liquor dealer; or any house located in any county, justice precinct or other subdivision of a county in which the sale of intoxicating liquor has been legally prohibited, where the owner, proprietor or lessee thereof has posted license issued by the United States of America, authorizing such owner, proprietor or lessee thereof to pursue the occupation and business of a retail liquor dealer or a retail malt liquor dealer." It will be noted, however, that no such provisions are made as to persons selling such liquors where same is by law permitted. A reference to the long line of cases decided by the Court of Criminal Appeals, construing the recently amended disorderly house statute, Jaliff v. State, 53 Texas Crim., 61, 109 S. W., 177; Bumbaugh v. State, 56 Texas Crim., 331, 120 S. W., 424; Tacchini v. State, 126 S. W., 1139; Sweeney v. State, 128 S. W., 390; Todd v. State, 131 S. W., 606, and Morford v. State, 131 S. W., 569, and probably others, will disclose the fact that in all of them the prosecutions arose in counties where local option was in force, and where in respect to any individual sale the steward or other officer would, as to such sale, have been guilty under the rule laid down by Judge Hurt in Krnavek v. The State, supra. An examination of these cases will also disclose the fact that it was in that court held and decided that the gist of the offense of keeping a disorderly house was the pursuing the business without first obtaining a license so to do. It seems, therefore, to us, in view of the settled construction given our tax laws with reference to the occupation or business of selling liquors, that the amendment to the Disorderly House Act, enacted in 1907, was not to extend or change this construction or to include, as subject to the tax, persons not theretofore included, but merely to provide that, in cases where by law license would be required to carry on the business, that the carrying on of such business without the required license should give it the quality of a disorderly house. It was not, we think, intended to visit such quality upon an institution, where no license was required, merely because liquors were, in a manner authorized by law, permitted to be sold.

It is worthy of note that in the case of Cassidy v. State, 58 Texas Crim., 454, 126 S. W., 600, that evidence of one sale did not make out a case of selling intoxicating liquors without license under section 4 of the Robertson-Fitzhugh law, although that section uses the very general language that "no person shall directly or indirectly *sell* spirituous, etc., liquors . . . without taking out a license as a

retail liquor dealer." There was testimony in that case of a sale. In passing on this question the Court of Criminal Appeals, speaking through Presiding Judge Davidson, uses this language: "There is nothing to intimate that he made but one sale, conceding the State's evidence is to be credited to the exclusion of the evidence offered by appellant. There is nothing else to indicate that appellant was engaged in the business of selling spirituous liquors which were intoxicating, except as the bartender of a regular licensed retail liquor dealer. If he was selling in violation of the law under license, it would not constitute him guilty under the charge here, because he was charged with selling without license. It is, therefore, unnecessary to consider any criminality or his relation to the law, if it be conceded he sold the whisky after getting it out of Sarrsfield's saloon. One sale of this character would not constitute appellant a retail liquor dealer, carrying on a business of that sort, under the provisions of the Act of the Thirty-First Legislature; and, if he sold it from Sarrsfield's saloon, it would not support the allegation in the complaint and information."

Again, in the still later case of Todd v. The State, 131 S. W., 606, it was held that a conviction for the act of making an individual sale of intoxicating liquor would not bar a conviction for keeping a disorderly house. In disposing of this matter the court say: "In regard to the last question, it may be stated that the plea of autrefois convict sets up that he had been indicted for selling whisky on the same dates as alleged in this indictment and had been tried and convicted for same. This plea was stricken out by the court below, on the ground that it was not the same offense, but a different offense. Here the offense for which the appellant was being prosecuted is for being the keeper of a house in which spirituous, vinous and malt liquors were sold and kept for sale without a license. The court below correctly overruled appellant's plea of former conviction, as the offenses were distinct and separate. Here he is indicted for pursuing a business without a license. The other cases, which he pleads in defense of his action here, are where he was indicted and prosecuted for the unlawful sale of whisky in local option territory. It needs no argument to answer these questions. The plea was without merit."

Now, then, it remains to be seen whether there has been such a change in our laws, in the light of these authorities, taxing and regulating the sale of intoxicating liquors as will or should require a departure from the holding and rules of construction adopted in the Austin Club case, so long and so uniformly held by the courts and adopted and recognized by every arm and branch of the State government which could be called on either to construe or enforce the law. The Act in force under which a recovery was sought in the Austin Club case was as follows: "Hereafter there shall be levied upon and collected from any person, firm or association of persons, *engaged in the business* of selling spirituous, vinous or malt liquors or medicated bitters an annual tax," etc.

From the Acts of the Twenty-Third Legislature it appears that there was presented to the governor of this State on the 6th day of May, 1893, an Act regulating the sale of intoxicating liquors and

fixing a tax therefor. Section 1 of same provides: "That hereafter there shall be collected from every person, firm or association of persons *selling* spirituous, vinous or malt liquors or medicated bitters within this State an annual tax on each separate establishment," etc. This Act was passed more than a year before the decision in the Koenig case was delivered, which was on May 19, 1894, and yet longer before the decision of this court in the Austin Club case, which was rendered on December 9, 1895, and it must therefore seem obvious, it occurs to us, that the slight change in phraseology found in the later Act above referred to, was not made with reference to said decision or any contention thereby sustained or with any intent or purpose to institute any new or different rule. Indeed, we think there was no special significance in the substitution in the later Act of the word "selling" for the words "engaged in the business," but that as used in the two Acts they mean the same thing. This view is rendered clear from a consideration of other provisions of the Act of 1893. For instance, in section 3 of that Act it is provided "that every person, firm or association of persons desiring to *engage* in the sale of spirituous, vinous or malt liquors," etc., shall file his application in which, among other things, he is required to "designate the place at which it is proposed to *carry on the sale* of such liquors." Again, section 6 of this Act, which provides a penalty for a violation of the sections of this law defining the offense reads: "That any person or association of persons who shall *engage in the sale* of spirituous liquors, etc., without having obtained a license therefor shall be fined," etc.

The language of section 1 of the Act of the Thirtieth Legislature is almost identical with the corresponding section of the Act of 1893. It is as follows: "Hereafter there shall be collected from every person, firm, corporation (new) or association of persons selling spirituous, etc., liquors, an annual tax," etc., *not located* in local option territory. The Act of the Thirty-First Legislature, widely known as the Robertson-Fitzhugh bill, is, as respects the matter here involved (section 1 of same), practically the same as the Act of 1907 above copied, except that the word corporation is omitted. The obvious intent and declared purpose of this Act, which is now the law, was to devise and enact a better and stricter system of licensing, regulating, taxing and controlling the business of selling intoxicating liquors, in places where such sales are permitted by law. This law and manifestly the authors of it had in mind the taxation, regulation and control of those engaged in the business of selling such liquors. This, it seems to us, is apparent from the whole Act, in the definition of the terms, "retail liquor dealer," "retail malt dealer," and indeed in many, if not all, of its provisions. For instance, in section 7 of the Act it is provided that no such dealer *"shall carry on said business"* at more than one place under the same license, and in many places (see sections 8, 9, 10, 12, 13, 14, 15, 19, 25 and 28) it refers to the business in which such dealer is engaged, and to his *occupation* as a liquor dealer, to his *business* of selling liquors and to his place of business.

And it must seem clear that an injunction in this case ought not

to be sustained under the disorderly house statute, unless the persons doing the acts complained of could be successfully prosecuted and convicted under the terms of that law. We think that such a prosecution, under said Act, could not be successfully maintained. Nor do we believe that the Act of 1893, which we have quoted above, nor the Act of 1907, nor the existing law of 1909, either or all of them, have the effect to introduce a different rule in respect to bona fide clubs than that announced in the Austin Club case. In that case Judge Brown in distinct and emphatic terms announced that the provisions of the then law as to open houses were not applicable to such clubs, and that such clubs could not under the terms of the then law secure license and in terms called attention to the fact that *"if the Legislature intended to prohibit this class of business, if it be termed a business, it might easily have done so in plain and unambiguous language, as it has done with reference to the prohibited sales above stated."* The decision in that case has been known to the profession and people of this State for more than sixteen years. A similar rule of construction has obtained and been in force in the Court of Criminal Appeals of this State for even a longer period. The rule comes to us with the weight of the greatest names that ever added luster to the annals of any time. We are not at liberty to depart from it except on such compulsion of reason as can furnish no answer. It is, too, an elementary rule without exception that statutes like this, penal in their character, must and should be strictly construed. The very first article of our Penal Code provides that "the design of enacting this code is to define in *plain language* every offense against the laws of this State, and to affix to each offense its proper punishment." In view of the many changes wrought in our Local Option Law, and in our system of taxation and regulation of the liquor traffic, questions which have been in the public mind for many years, it would have seemed, having in mind the significant words of Judge Brown, that if it had been the purpose of the law-making body, to have instituted a rule under which clubs, such as this, should be taxed or punished for furnishing, as a mere incident of their organization, liquors to their members, that such legislative intent would have found expression in clear and unambiguous terms. Not only has a different rule, from that contended for by the State, for all these years obtained, "without variableness or shadow of turning" in the courts of this State, but the same rule has been accepted and acted upon by our people, and also recognized by those whose personal and official duty, concern and office it is to construe such statutes and to aid in the enforcement of the law.

Under date of November 29, 1907, after the Baskin-McGregor law of 1907 had gone into effect, there was rendered by the Attorney-General's department an elaborate and evidently well considered opinion, in a letter addressed to Honorable R. E. L. Roy, then county attorney of Tarrant County, in which, among other things, it was stated: "It is evident from the provisions of the statute above quoted that it was the intention of the Legislature to impose the occupation tax provided for by the Act upon the selling of liquors as a *business*. There is no doubt but that the distribution of liquors

by the Fort Worth Country Club to its members is selling in the ordinary sense of the term. (Krnavek v. The State, 41 S. W., 612.) But the decisions of the courts of this State and also of many other States are to the effect that for the purposes of a statute requiring the payment of a tax for the business or occupation of selling liquors the term "selling," as used in such laws, must be construed to mean selling as a business or occupation. (See Koenig v. State, 33 Texas Crim., 375; State v. Austin Club, 89 Texas, 20.)" And after a review of the provisions of the Baskin-McGregor law and a consideration of the decisions of the courts of this State, as well as the decisions of many other courts of the Union, the following conclusion was reached: "Upon the whole we think the intent must govern. On the one hand, if the object of the organization is merely to provide the members with a convenient method of obtaining a drink whenever they desire it, or if the form of membership is no more than a pretense, so that any person, without discrimination, can procure liquor by signing his name in a book or buying a ticket or a slip, thus enabling the proprietor to conduct an illicit traffic, then ·it falls within the terms of the law. But on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for the enjoyment of golf or other innocent sports, or for social, literary, artistic or other purposes, to which the furnishing of liquor to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners, and daily papers might be, then it can not be considered as within the purpose or letter of the law." We have, therefore, a condition in which there is not only a concurrence of judgment by the two courts of last resort in this State, but the acceptance and acquiescence in this conclusion by the legal department of the State government, with reference to and on the faith of which clubs similar to the one here sought to be enjoined have been in operation in the principal cities of Texas for many years. As we have seen, they can only be enjoined under conditions and on evidence under which they could be convicted and branded as criminals. To constitute a crime the offense must be defined in plain language. The law is not designed to entrap our citizens in veiled language of uncertain meaning. To do so would be as odious and hateful as the conduct of the tyrant of the ancient world who bulletined his decrees beyond his subject's sight and yet punished for · their infraction. We therefore do not doubt that before we would be authorized to reverse these settled rules of construction of the courts of this State, go counter to the universal and accepted practice permitted and sanctioned by law, we should indeed feel that authority so to do ought, clearly and undeniably, to be found in the enactments of our Legislature. That the provisions of our liquor laws are not, in their intent and provisions, as to open houses and otherwise, applicable to clubs is as true now as it was when this court announced its decision in the Austin Club case, and that if it had been intended to reach such clubs it was as essential to do so in plain and unambiguous language as it was when Judge Brown so

declared in that case. We attach but little importance in this case to the provisions of our statute that possession of an internal revenue license is prima facie proof that such person is engaged in the retail liquor business. That is but a rule of evidence and has only the effect to make a prima facie case which may be rebutted and in this case is conclusively overborne by the agreed facts.

Summarizing the whole matter, we think the following conclusions sound:

(a) That statutes under which the injunction is sought in this case are penal, or at least quasi penal, in their character and are to be strictly construed:

(b) That unless appellees could be prosecuted and convicted as keepers of a disorderly house under article 359 of the Penal Code, having in mind and in view the construction of this article by the Court of Criminal Appeals, and the decisions of this court, the relief sought herein by injunction ought to be denied.

(c) That the possession of the internal revenue license and the inference arising therefrom can not under the agreed facts of this case operate to fix on appellees the liabilities and burdens of a retail liquor dealer.

(d) That the act of applying for and receiving internal revenue license can not and does not estop appellees from denying the fact and tendering proof that they are not engaged in the business of selling intoxicating liquors, as that term is understood and meant in our law on that subject.

(e) That a bona fide club, situated in a precinct, city or town where liquor may be lawfully sold, organized for purposes permitted and sanctioned by law, which as a mere incident to its organization and without profit, furnishes liquor to its members and not to the public generally, is not a person, under the laws of this State, engaged in the occupation or business of selling intoxicating liquors.

(f) That while each individual act of such a club, in territory where the sale of liquor is prohibited by law is a sale, that in territory where such sale is not unlawful, the method in question of furnishing liquors to the members of such club is not embraced in the general language of selling or engaging in the business of selling intoxicating liquors.

(g) That in respect to clubs not organized in good faith for purposes authorized by law, but merely as shifts, shields or subterfuges, such sales would not be permitted and under such circumstances they would and should be held to be disorderly houses and subject to all the pains and penalties of the law.

(h) Since such clubs are not to be treated or considered as engaged in the business of selling intoxicating liquors the fact that they are located without the saloon limits can not affect the question in any manner.

(i) Nor do we believe the fact, if it be a fact, that there has been or may be a diversion of the club's funds can have any controlling effect in the disposition to be made of this case.

(j) That while the general language contained in the Act of 1909,

and especially in sections 2 and 4 of same, might, if it stood alone, and was not to be interpreted in the light of the decisions with reference to and knowledge of which we must assume it was enacted, be sufficient to include appellees within its terms, it can not and does not include them under the fair and just construction thereof which the law not only sanctions, but requires.

We have gone into the question at greater length than would seem necessary, but in view of the importance of the question, the fact that many suits are now pending and that a large number of counsel as *amicus curiae* have intervened in the suit with briefs and argument and as we have been urged to hold the injunction authorized, not only by. the officers of Dallas County, but by other officers of the State, as well as the earnest and able private counsel appearing for it, we have felt that an authoritative decision would have an added force and certainly operate as a convenience if we should include herein the sources of the law and the statutes and decisions on which our conclusions rest. We have not stopped to. consider what the law should be, but have rather sought to determine what it is. Nor have we considered whether the Legislature might enact a law which would place clubs such as this under the ban of judicial and legislative outlawry and disapproval. These matters belong to the law-making bodies, to us belong the duty, solely and only, of declaring the law as it has been written. Therefore, if these conclusions are correct, it must result (1) that the injunction in the case, it not appearing that the defendants, or either of them, had been engaged in the business of selling intoxicating liquors, was properly denied; (2) that the dispensing of intoxicating liquors to the members of the Dallas Golf and Country Club, in the manner and for the consideration shown by the facts stated, was not a sale of such liquors without obtaining a license within the meaning of article 359 of the Acts of the Thirtieth Legislature.

Opinion delivered May 17, 1911.

### ON MOTION FOR REHEARING.

Mr. Chief Justice Brown and Mr. Justice Dibrell concurring in overruling motion.

We have given due consideration to the motion for rehearing in this case and it is overruled.

We fully concurred in the opinion of the court prepared by Mr. Justice Ramsey, which we believe correctly announces the law in this State on the subject. If the law is to be changed it must be done by the Legislature. This court has not considered the policy of that law.

Opinion delivered June 23, 1911.