

# The Attorney General of Texas

December 31, 1985

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Marvin J. Titzman
Executive Director
Texas Surplus Property Agency
P. O. Box 8120
San Antonio, Texas    78208

Opinion No.  JM-417

Re:    Whether the Texas Surplus
Property Agency is subject to
section 35.405 of Title 110B,
which requires reimbursement to
the general revenue fund for
state retirement contributions

Dear Mr. Titzman:

You ask whether the Texas Surplus Property Agency must pay
reimbursement to the general revenue fund for state retirement
contributions pursuant to 35.405 of Title 110B, V.T.C.S., because it
receives donations of property from the federal government. We
conclude that the provisions of section 35.405 do not apply to the
Texas Surplus Property Agency in the situation you describe.

Section 35.405 provides that

> (a)  If an employer applies for money provided
> by the United States, an agency of the United
> States, or a privately sponsored source, and if
> any of the money will pay part or all of an
> employee's salary, the employer shall apply for
> any legally available money to pay state contribu-
> tions required by Section 35.404 or 36.201 of this
> subtitle.

> (b)  When an employer receives money for state
> contributions from an application made in accor-
> dance with Subsection 1(a) of this section, the
> employer shall immediately send the money to the
> retirement system for deposit in the general
> revenue fund of the state treasury.

> (c)  Monthly, employers shall report to the
> retirement system in a form prescribed by the
> system:

> > (1)  the name of each employee paid in whole .
> > or part from a grant;

(2)  the source of the grant;

(3)  the amount of the employee's salary paid from the grant;

(4)  the amount of the money provided by the grant for state contributions for the employee; and

(5)  any other information the retirement system determines is necessary to enforce this section.

(d)  The retirement system may:

(1)  require from employers reports of applications for money;

(2)  require evidence that the applications include requests for funds available to pay state contributions to the retirement system for employees paid from the grant; and

(3)  examine the records of any employer to determine compliance with this section and rules promulgated under it.

(e)  A person commits an offense if the person is an administrator of an employer and knowingly fails to comply with this section.

(f)  An offense under Subsection (e) of this section is a Class C misdemeanor.

(g)  An employer who fails to comply with this section may not, after the failure, apply for or spend any money from a federal or private grant. The retirement system shall report alleged non-compliance to the attorney general, the state treasurer, the Legislative Budget Board, the comptroller of public accounts, and the governor. The attorney general shall bring a writ of mandamus against the employer to compel compliance with this section.

We consider initially the meaning of section 35.405.  The Texas Supreme Court has stated that the dominant rule to be observed in the construction of statutes is to give effect to the intention of the legislature and that, generally, the intent and meaning is obtained primarily from the language of a statute.  See <u>City of Sherman v.</u>

_Public Utility Commission of Texas_, 643 S.W.2d 681, 684 (Tex. 1983). _See also Seay v. Hall_, 677 S.W.2d 19, 25 (Tex. 1984). Also, the words employed in a statute are ordinarily given their plain meaning. V.T.C.S. art. 10; Attorney General Opinion H-193 (1974).

Section 35.405 of Title 110B is intended to be a recodification, without substantive change, of chapter 3, section 3.63 of the Texas Education Code which originally was enacted by House Bill No. 2083 of the Sixty-sixth Legislature in 1979. The specific language throughout the section in question refers to money provided from federal or private sources for employees' salaries and to money provided by a grant for the state contributions to the retirement system for employees paid from a grant. The bill analysis to House Bill No. 2083 prepared for the House Committee on Public Education, on file with the Legislative Reference Library, describes that section of the bill as a new section to the Texas Education Code "to provide for the collection of federal grant money for the state's contribution to [the Teacher Retirement System]." Further, it is well established that penal acts and statutes imposing a penalty must be strictly construed. _See_ §35.405(e), (f), (g); _Agey v. American Liberty Pipe Line Co._, 172 S.W.2d 972, 974 (Tex. 1943); _State v. Duke_, 137 S.W. 654, 662 (Tex. 1911).

We conclude that the legislature intended section 35.405 to require reimbursement to the general revenue fund for Teacher Retirement contributions on salaries that are paid from money provided by grants from the United States, an agency of the United States, or a privately sponsored source. It is our opinion that the Surplus Property Agency normally does not receive such money.

The Federal Property and Administrative Service Act of 1949, as amended, provides that surplus personal property under the control of an executive agency of the federal government may be transferred to a state agency which is designated by state law as the agency responsible for the fair and equitable distribution of the property in accordance with the provisions of the act. _See_ 40 U.S.C. §484(j). Section 484(j)(4)(D) allows the state agency to assess and collect service charges from participating recipients to cover costs of the state agency's activities. The federal act requires such charges to be based on services performed by the state agency.

The Texas Legislature created and designated the Texas Surplus Property Agency as the state agency for the purpose of the Federal Property and Administrative Services Act of 1949. _See_ V.T.C.S. art. 6252-6b, §4. Its primary function is the acquisition, warehousing, and distribution of surplus federal personal property to entities that qualify under the federal act. The Surplus Property Agency may assess service charges for such acquisition, warehousing, and distribution, which are deposited in the Service Charge Trust Fund that is not part of the State Treasury. The receipts from such charges are authorized,

as needed, for the operation of the agency. <u>See</u> art. 6252-6b, §4, subsecs. (1), (m).

The operating funds from which the Surplus Property Agency pays the salaries of its employees are generated by the agency's charges for the acquisition and redistribution of federal surplus property. The federal government's donations of surplus property generates activity that results in payment of employees' salaries and the state's liability for retirement contributions. The salaries, however, are not paid from the donations but from charges paid by units of local or state government that participate in the program. Such charges are not money from federal or private grants. Hence, we conclude that section 35.405 of Title 110B does not require the Texas Surplus Property Agency to reimburse the general revenue fund for state retirement contributions unless salaries are paid by the agency from direct grants of money to the agency from federal or private sources.

## S U M M A R Y

Section 35.405 of Title 110B, V.T.C.S., requires reimbursement to the state's general revenue fund for state retirement contributions that occur on salaries paid from money provided by federal or private grants. The funds from which the Texas Surplus Property Agency pays the salaries of its employees are generated by charges to the recipients of federal surplus property that the agency acquires and distributes. Since such charges are not money from federal or private grants, the reimbursement requirement of section 35.405 does not apply to the normal operations of the Texas Surplus Property Agency.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General